M'DERMUTT and others *against* STRONG and others.

This Court has power to assist a judgment creditor to discover and reach the property of a debtor, which is beyond the reach of an execution at law. To get possession of the equitable interest of a debtor, as a resulting trust in goods and chattels, the judgment creditor must come into this Court.

But, before a judgment creditor can be entitled to the aid of the Court, against the goods and chattels of his debtor, or against any equitable interest of such debtor in them, he must first have taken out execution at law, and caused it to be levied or returned, so as thereby to show a failure of his remedy at law.

A judgment creditor who so takes out execution at law, but is unable to reach a residuary trust interest in the chattels of his debtor, and files his bill for the aid of this Court, gains, by his execution and legal diligence, a legal preference to the assistance of this Court, or a lien on the equitable interest, which cannot be affected or impaired by any subsequent assignment of that equity by the debtor, either for the benefit of all his creditors generally, as under the insolvent act, or for the benefit of a particular creditor.

And although it is the favourite policy of this Court to distribute the *assets* among all the creditors, *pari passu ;* yet when such a judicial preference has been established by the superior legal diligence of any creditor, that preference will be observed in the distribution of the assets.

SUPPLEMENTAL bill, filed *September 2,* 1819, against the defendants, as assignees of *James Robertson*, an insolvent debtor, setting forth the *original bill* of discovery, filed *February* 2d, 1809, against *Robertson, White Mat-*

*Nov.* 15*th.* and *Dec.* 26*th.*

*lack*, and *Robert C. Allyn*, and their answers.    The plain-
tiffs were judgment creditors of *Robertson*,   and their seve-
ral judgments were entered, up from the  6th  to the 21st of
*May*, 1808, and executions were issued thereon to the sheriff
of the city and county of *New-York*, who levied on the ship
*Cincinnati* and three other ships, as the property of *R.*, and
returned that he  could not raise the money thereon,  as the
ships were claimed by virtue of bills of sale and  assign-
ments from *R.*

The defendants put in  their answer to the  supplemental
bill, *October* 30, 1819;  and  a  replication was  filed, and
proofs taken in the cause.   The  material  facts  appearing
from the pleadings and proofs are sufficiently stated  in the
opinion delivered by the Court.

*Nov. 15th.*        The cause was, this day, brought to a  hearing.

*S. Jones*, for the plaintiffs.    He cited 2 *Bl. Comm.*  296.
*Perkins, sec.* 55.  8 *Johns. Rep.* 385. 9 *Johns   Rep.* 73.
1 *Vernon*, 398, 399. 1  *Pr.  Wms.* 444.  2 *Atk.* 477.  3
*Atk.* 200.  739.   *Ambler*, 79.  1 *Maddock's Equ. Pr*, 418.
2 *Johns. Ch. Rep.* 283. 296. 312.

*Wells*, contra.   He cited 5 *Johns. Rep.* 335. 386. 2
*Johns. Ch. Rep.* 283.

*Dec. 26th.*        The cause stood over for consideration until this day.

THE CHANCELLOR.   The statement of a few  facts will
sufficiently bring up to view  a very  important  question
arising, and discussed in this case.

*James Robertson*, on the 27th of *April*, 1808, assigned to
*White Matlack*, jun. the ship *Cincinnati*, upon trust, to sell
her, and, out of the proceeds, to discharge certain debts and
engagements of *Robertson*, and to account for the surplus to
*Robertson*, himself, or to his assignees, if any should in the

mean time, be appointed under the insolvent act. *M.* afterwards transferred his trust to *Allyn*, and the ship was sold by *Allyn*, with the consent of the plaintiffs, on the 9th of *March*, 1809, and the surplus proceeds, amounting to 5,400 dollars, after satisfying the trusts, were secured by a note, dated 9th *March*, 1809, payable in six months, taken in part payment of the ship. The note was deposited with the defendants, as stakeholders, by *Allyn*, with the approbation of the plaintiffs, in trust to receive the money when due, and hold it subject to the order of this Court, in the original suit then pending, and of which the defendants then had notice. The deposit of the note, by this arrangement, was on the 30th *March*, 1809 ; and in *June* following, *Robertson* was discharged under the insolvent act, and the defendants were appointed his assignees. The note was paid to the defendants when it fell due, and they now set up a right to distribute the money, as assignees of *Robertson*, rateably among all his creditors. The plaintiffs, on the other hand, claim it as judgment and execution creditors at law, entitled to a preference over the general creditors.

The plaintiffs severally obtained judgments at law against *Robertson*, in *May*, 1808 ; and in *May* and *June*, 1808, they severally issued executions against the estate of *Robertson*, which were levied on 'the ship, as far forth as such a levy could be made consistent with the prior assignment. Early in *July*, 1808, the plaintiffs gave notice to *Allyn* of their judgments, executions and levy, and that they should look to him for the surplus, after satisfying the valid trusts which had priority to the lien of their executions.

The question, then, is, have the plaintiffs, as execution creditors at law, a priority of right over the creditors at large, to these surplus proceeds, being the 5,400 dollars so received by the defendants when the note fell due, in *September*, 1809 ?

The surplus, after satisfying the objects of the assign‐ment, (and which are assumed in this case to have been fair and valid,) belonged, as a resulting trust, to *Robertson*. They could not have belonged to any other person, for the as‐signees were not created, until after the sale of the ship, the liquidation of the surplus, and the deposit of the same with the defendants. Nor was this resulting trust the sub‐ject of seizure and sale at law. It was a mere equity, and could only be reached by the aid of this Court. This was so decided in *Wilkes* and *Fontaine* v. *Ferris*, (5 *Johns. Rep.* 335.) and the same doctrine was declared by the K. B. in *Scott* v. *Scholey*. (8 *East*, 467.) A judgment credi‐tor must go into equity to obtain possession of the equitable interest of his debtor; and if he has taken and exhausted all the means in his power at law, he will be entitled to the aid of this Court to discover and apply the property to satisfy his execution. In *Bayard* v. *Hoffman*,* the cases were ex‐amined touching the power of this Court to enable a cre‐ditor to reach trust property beyond the reach of an execu‐tion at law, and I concluded, that the Court had, and ought to have, this power. But this case stands on stronger ground than if it rested merely on the general jurisdiction of this Court upon residuary trust interests in chattels, for the plaintiffs come in the character of *execution creditors*, and have thereby acquired, by means of their executions at law, what this Court regards as a legal preference, or lien on the property so placed in trust.

The cases on this point were all recently reviewed in *Brinckerhoff* v. *Brown*,† and it would be useless to notice them again. The case of *Hendricks* v. *Robinson*, (2 *Johns. Ch. Rep.* 283.) does not interfere with the question whe‐ther an execution creditor at law might not acquire a right, to be recognized and enforced in this Court, to the surplus, or resulting trust, belonging to the debtor, after the purposes of the prior assignment of the chattel interest had been an‐swered. In that case, there was no surplus in the hands of

* *Ante*, p. 450.

† *Ante*, p. 671.

*Minturn & Champlin.* The great point there was, whether the assignment to them was valid or fraudulent, and whether the plaintiffs could divert the proceeds of the property assigned, from the fair and lawful trusts created by the assignments, which were made before the plaintiff had even commenced his suit at law. I regard the law to be clearly settled, that before a judgment creditor can come here for aid against the goods and chattels of his debtor, or against any equitable interest which he may have therein, he must first take out execution, and cause it to be levied or returned, so as to show thereby, that his remedy at law fails, and that he has, also, acquired, by that act of diligence, a legal preference to the debtor's interest.

The surplus of the debtor's interest, in the present case, remained undisposed of by the debtor to whom it resulted, when the plaintiffs filed their bill in this Court. If they had a right to it as judgment creditors, by having sued out execution at law, and having filed their bill before any other judgment creditors had done either, that right could not be affected by a subsequent assignment of that equity by the debtor. And whether that subsequent assignment was for the benefit of the creditors in general, as it was in this case, or for the benefit of some individual creditor, cannot alter the application of the principle. It was not in the power of the debtor to withdraw that surplus from the lien so acquired, in the view of this Court, by the execution. Admitting that the plaintiffs had acquired, by their executions at law, a *legal preference to the assistance of this Court,* (and none but execution creditors at law are entitled to that assistance,) that preference ought not, in justice, to be taken away. Though it be the favourite policy of this Court to distribute assets equally among creditors, *pari passu,* yet, whenever a judicial preference has been established, by the superior legal diligence of any creditor, that preference is always preserved in the distribution of assets by this Court. This point appeared most abundantly in the course of the discus-

sion on the authorities in the late case of *Thompson* v. *Brown and others.** If the plaintiffs, instead of seeking merely the surplus proceeds of the ship, had charged the assignment to have been fraudulent, and had obtained a decree, setting it aside as void, it cannot be doubted but that their executions, after the impediment of the assignment was removed, would have held the whole subject assigned, in preference to other creditors who had no such executions. Instead of seeking to recover the whole value of the ship, they content themselves, in this case, with asking the aid of this Court for the surplus resulting to their debtor ; and no good reason appears why their legal priority or lien should not be as available for a part, as for the whole.

It may be laid down as a rule of equity, that an execution creditor at law has a right to come here and redeem an incumbrance upon a chattel interest, in like manner as a judgment creditor at law is entitled to redeem an incumbrance upon the real estate ; and the party so redeeming will be entitled, in either case, to a preference, according to his legal priority. The plaintiffs, in this case, had acquired that right of redemption when the ship *Cincinnati* was sold, by agreement, without prejudice to their rights ; and instead of seeking to redeem, they are equally entitled to come here and claim the surplus.

I shall, accordingly, decree, that the defendants pay to the plaintiffs the 5,400 dollars, so received by them in trust, in *September*, 1809 ; and that it be referred to a master to inquire and report what disposition was made of that money by the defendants, and whether it was kept in bank by itself, or was mingled with their own moneys, and employed in like manner ; that he compute interest on that sum, from the time it was paid to the defendants, up to the date of his report, reserving, however, the question of interest, until the coming in of the report ; and that the said moneys to be paid by the defendants, if not sufficient to satisfy the judgments of the plaintiffs, with interest on those judgments,

for the real sum recovered and due, including their costs of those judgments and of this suit, be paid to all of them rateably, in proportion to the amount due to each of them respectively, as aforesaid; and that the money be paid to the solicitor for the plaintiffs, for the purpose of such distribution.

(a) Vide *Brinkerhoff* v. *Brown, ante,* 671. and *Williams* v. *Brown, ante,* 682.