PRESIDENT, DIRECTORS, &c. OF THE ATLAS BANK

*vs.*

PRESIDENT, DIRECTORS, &c. OF THE NAHANT BANK.

In adjusting the claims of the creditors of an insolvent bank whose estate and effects are put into the hands of receivers, under Rev. Sts. *c.* 44, those creditors, who have demanded payment of the bills of the bank and been refused, are not to be allowed twenty-four per cent. interest, under Rev. Sts. *c.* 36, § 29 ; but they are to be allowed six per cent. interest from the time of such demand.

In such adjustment, the claims of creditors to money deposited by them in the bank under an unlawful agreement that it should be paid at a future day certain, with interest, are to be allowed : Also. the claims of the holders of bills issued by the bank under an unlawful agreement that they should be kept from free circulation for a limited time, or not be returned to the bank for redemption, within a limited time.

WILDE, J.[*] This is a suit in equity against an insolvent bank, and is founded on the provisions of the Rev. Sts. *c.* 44. The bill alleges the insolvency of the defendant bank, and that its charter had been repealed and annulled by the legislature , praying thereupon for the appointment of receivers, and that such proceedings might be had as are directed by the said 44th chapter of the revised statutes. (See 23 Pick. 480.)

Receivers having been appointed, they were ordered to give notice to all creditors of the defendant bank, to bring in and prove their debts against said bank ; and the case now comes before us on sundry exceptions to the report of the receivers as to the allowance and disallowance of sundry claims of the said creditors.

The questions raised have been ably discussed by counsel, and have been fully considered by the court. They are cer-

---

[*] *Hubbard,* J. did not sit in this case

tainly not wholly free from seeming doubts and difficulties ; but a close and careful examination of the merits of the case has brought us to a conclusion, which appears to us to be well sustained by the principles of equity, and according to which equal and substantial justice may be administered to all parties interested.

The first class of claims, to which objections have been made, includes all those, which have been demanded of the Nahant Bank, in conformity to the Rev. Sts. c. 36, § 29 ; and the claims are for damages for the detention or non-payment of the debts due, at the rate of twenty-four per cent. a year from the time of demand.

These claims were disallowed by the receivers, on the ground that they were not equitable ; because the assets of the said bank were not sufficient to pay the other claims allowed, and that if these claims for damages should be allowed, they would operate to the prejudice of other claimants equally meritorious ; and because also the receivers were of opinion that the 24 per cent., exacted by the statute, was a penalty, which ought not to be enforced in chancery, and was not a debt within the true meaning of the Rev. Sts. c. 44, § 10, which require the receivers to "pay all debts due from the corporation, if the funds in their hands shall be sufficient therefor, and if not, they shall distribute the same ratably among all the creditors who shall prove their debts."

To this decision of the receivers the several claimants except, and their counsel contend that the word " debts," as used in the statute, is not to be understood in its strict technical sense, but is to be understood in its popular meaning, as extending to all legal demands actually due, and which may be ascertained without the intervention of a jury.   Admitting this construction of the statute to be correct, we are still of opinion, that the decision of the receivers, respecting these claims, is well founded.

Courts of equity will not generally aid a party to enforce a penalty, especially if thereby a third party would be prejudiced. Now it is manifest that these claims, although nominally against the Nahant Bank, are really claims of preference over other

creditors who arc entitled, equally with these claimants, to a ratable distribution of the assets of the bank, and without reduction by the allowance of these penalties, which were intended to be enforced against the bank alone, and not to the prejudice of its *bonâ fide* creditors. The bank has no interest whatever in the distribution of these assets ; and the claims, if allowed, cannot operate against the faulty party, but to the prejudice of innocent creditors, against whom these penalties were never intended by the legislature to be extended. This certainly a court of equity will not allow.

But the counsel for the claimants deny that the statute, on which their claims are founded, is a penal statute. But a similar statute was considered, in *Suffolk Bank* v. *Worcester Bank,* 5 Pick. 109, as penal, and highly penal. And we think it was rightly so considered. A statute may be penal although a part or the whole of the penalty is given to the party injured. We are therefore of opinion that the receivers were quite right in rejecting these claims. They however allowed interest at the rate of six per cent. on the bills, after payment was demanded ; and to this allowance the plaintiffs' counsel except. They contend, that in equity there is no difference between those bill holders, who demanded payment of their bills, and those who did not : That all the bill holders have been equally prejudiced by the failure of the bank, and the non-payment of their bills, and that, therefore, they are entitled to a ratable distribution of the assets : That these claimants are entitled to damages against the bank at the rate of 24 per cent. per annum, which supersedes the claim of 6 per cent. to which they might be entitled but for the statute ; and that, although they cannot enforce their claims against the bank, they have no right to fall back on their claim of six per cent., as against the assets.

There is seeming weight in these objections, and they have been deliberately considered by the court ; but considering all the circumstances of the case, we are of opinion that the allowance of 6 per cent. on the bills in question is justified by the principles on which courts of equity proceed in analogous, if not precisely similar cases. In distributing the assets of an insol-

vent debtor between his creditors, the general principle is, that all the creditors are to stand on a footing of equality. But if any one of them, by his superior legal diligence, has acquired a legal right or preference, a court of equity will not divest him of it. The rule is thus laid down in *Codwise* v. *Gelston*, 10 Johns. 522 : " If a fund for the payment of debts be created under an order or decree in chancery, and creditors come in to avail themselves of it, they will be paid *in pari passu*, or upon a footing of equality. But where the law gives priority, equity will not destroy it, and especially where legal assets are created by statute, (as in case of judgment liens,) they remain so, though the creditors be obliged to go into equity for assistance. The legal priority will be protected and preserved in chancery." So in *Purdy* v. *Doyle*, 1 Paige, 559, it is said, that judgment creditors, who have obtained a specific or general lien at law, are entitled to a priority of payment, and to the fruits of their superior diligence. And the same principle is laid down by Chancellor Kent, in *M'Dermutt* v. *Strong*, 4 Johns. Ch. 687. These were cases, it is true, where the preferred creditors had obtained a legal lien on the debtor's property ; and in the present case, the claimants have obtained no such lien on the property of the bank ; nor could they so have done, by our law, if they had prosecuted their claims to judgment. The principle of equity, however, laid down in these cases, has a strong bearing on the present claims. The claimants have by their superior diligence acquired a legal preference over the other bill holders, who have neglected to present their bills to the bank for payment. Independently of the statute imposing a penalty on the bank, the claimants have obtained a legal title to interest, which the other bill holders have not. And the claimants are not to be prejudiced by the statute which imposes a penalty in addition to the legal rate of interest. The penalty imposed is in fact but 18 per cent. in addition to the legal rate of interest ; and the inability of the claimants to enforce the payment of the penalty ought not in equity to impair their claim to legal interest, which only places them on a footing of equality with the plaintiffs, the depositors, and the holders of post notes.

all of whom are allowed interest by the receivers ; and if the other bill holders had presented their bills to the bank for payment, all the creditors would now stand on an equal footing. And it seems to us inequitable that their neglect should prejudice the claims of the more vigilant creditors, who are by law entitled to interest. Interest, when it arises by contract, is as much a debt as the principal ; and so we think it is when it is due by law, though it may arise on an implied promise. We are of opinion, therefore, that the bill holders, who demanded payment of their bills, are entitled to interest at the rate of six per cent. from the time of their demands, as against the assets ; but that in equity they are not entitled to the additional 18 per cent. claimed, which we consider in nature of a penalty, which is not to be enforced to the prejudice of the other creditors.

Some objections were made to the allowance of interest on those bills which were claimed to be due to assignees, after the demand of payment at the bank ; but we consider the interest as incidental, and that it passed with the bills, if it was so intended. Even a chose in action may be assigned in equity. And upon the whole, we are of opinion, that the report of the receivers, as to the allowance and disallowance of interest on the demands proved, is not open to any valid exception.

The next claims, to the allowance of which objections have been made, are those said to be founded on illegal contracts. Of these claims there are two classes. The one, those made by depositors of money in the defendant bank, on an agreement that the money should remain in deposit for a certain time, and should be paid at a future day with interest : The other, the claims made by the holders of bills issued upon an agreement to be kept out of circulation, and not to be demanded of the bank for a limited time.

In regard to the first class of claims, it was decided in *White* v. *Franklin Bank*, 22 Pick. 181, that such a depositor might recover back the money lent, although no action could be maintained against the bank upon the express contract. That decision, as it seems to us, is well founded on the cases there cited, and on sound principles. To have decided otherwise would

have given effect to an illegal contract, in favor of the principal offender, and would have operated as a reward for an offence which the statute was intended to prevent.

In some of the circumstances, these claims differ from that of *White* v. *Franklin Bank*, which, however, we do not deem important, as in relation to the principal ground on which that case was decided, there is no difference. Upon the authority of that case, therefore, and upon principle, we consider the claims of these depositors, as allowed by the receivers, to be legal and valid demands against the bank ; no allowance being made for any penalty, or the fruits of an illegal contract. The depositors then are the creditors of the bank, and why are they not entitled, equally with the other creditors, to a distributive share of their assets ? It is said that these loans may be presumed to have caused the losses and embarrassment of the bank. But such a presumption is without the proof of any circumstance to support it, and is indeed in opposition to the facts reported by the receivers. By their report, it appears that on the 7th of December 1835, the following preamble and vote were passed by the Nahant Bank : " Whereas this bank has extended its business further than is found to be prudent or convenient, and the Atlas Bank has agreed to relieve us by taking a portion of our excess of business off our hands, and has heretofore relieved us therefrom : Now therefore it is voted, that the cashier of this bank be authorized and instructed to indorse such notes for this bank as we have agreed with the Atlas Bank that said bank shall take off our hands ; and that similar indorsements heretofore made by him are hereby confirmed, and this bank will be bound by all such indorsements heretofore or hereafter made."

All the deposites in dispute were made in the year 1836 ; some of them late in the year, just before the bank stopped payment, and not long before its charter was annulled ; so that it cannot be doubted that the obtaining of these deposites by the bank was the consequence, and not the cause, of its embarrassments ; and that a portion of them is included in the assets now to be distributed ; and therefore, upon the plainest principles of

equity, as it seems to us, these creditors are entitled to a share in the distribution.   As public policy does not interpose to deprive them of their legal claims on the bank, so neither should it intercept their equitable claims on its funds.

And we think the same principle applies to the other class of claims in favor of the holders of bills issued on an agreement that they should be kept from free circulation, and should not be demanded of the bank for a limited time.   By the issue of these bills, the assets of the bank have been augmented, and in equity the bill holders ought to be let in to a share in the distribution.

By the Rev. Sts. *c.* 36, § 61, it is enacted that every bank which shall issue any bill, note, check, or draft, redeemable in any other manner, than by payment in specie on demand, shall be liable to pay the same in specie to the holder thereof, on demand.   If then these bills had been expressly made payable at a future time, they were rendered valid claims on the bank, and were by law payable on demand, notwithstanding the time of payment expressed in the bills.   Afterwards by *St.* 1837, *c.* 224, it was enacted that "no bank shall loan or issue any of its notes or bills, excepting such post notes as are authorized by law, with an express or implied agreement or understanding, that such notes or bills shall be kept from free circulation for a limited time ; and that any bank so offending shall forfeit and pay not exceeding one half nor less than one fourth part of the whole amount loaned or issued."   We do not find that any of these bills were lent or issued after this last statute.   If, however, any were so issued or lent, the claims of the holders stand on the same footing with those of the depositors already considered. The prohibition and the penalty are on the bank, as the offending party.   And besides ; as before remarked, these bills are expressly declared to be valid demands against the bank.   The agreements not to put them into circulation, or to demand payment of them at the bank, were void, but did not vitiate the bills.

We are therefore of opinion, that all these claims have been

rightly allowed by the receivers, and that the assets of the bank, in their hands, are to be distributed according to their report.

*Exceptions overruled.*

*Greenleaf, Parsons & Gardiner,* for the Atlas Bank, in support of the exceptions taken to the receivers' report.

*Leland,* (*James* was with him,) for the creditors whose claims were disallowed by the receivers.

*B. R. Curtis,* for the creditors whose claims were allowed by the receivers, and objected to by the Atlas Bank.