WABASH AVE. BAPTIST CHURCH SOC. (O'NEIL v.). See Case No. 10,531.

WABASH NAV. CO. (CULBERTSON v.). See Case No. 3,464.

WABASH RY. CO. (TYSEN v.). See Case No. 14,315.

WACOUSTA, The (BARRETT v.). See Case No. 1,050.

## Case No. 17,027.

### Ex parte WADDELL.

[1 N. Y. Leg. Obs. 53; Betts' Scr. Bk. 87.]

District Court, S. D. New York. Oct., 1842.

BANKRUPTCY — TITLE OF ASSIGNEE — CREDITORS' BILL—RECEIVERS.

1. Where a creditor's bill has been filed, and a receiver has been appointed, to whom the debtor has executed a conveyance of his estate and effects, choses in action, &c., and subsequently the debtor applies for and obtains a decree in bankruptcy, no lien or security on the bankrupt's real or personal estate is created, but the estate and effects of the bankrupt vest in the general assignee.

2. The application for a delivery over by the receiver of the estate and effects of the bankrupt must be made to the court of chancery.

[In bankruptcy. Application by W. C. H. Waddell, the general assignee of John H. Coster, a bankrupt, to compel the receiver appointed in chancery at the suit of Charles A. Heckscher, a judgment creditor, in the state court, to deliver to such assignee the property and effects of the bankrupt in his hands.]

BETTS, District Judge. It is unnecessary to rehearse the facts in this case farther than to present the single point in controversy, which is, whether the choses in action, and effects of the bankrupt not subject to execution, pass to the general assignee under the decree of bankruptcy, or belong to the receiver appointed under a creditor's bill. On the first of February, 1842, Charles A. Heckscher, a judgment creditor, filed a bill in chancery, pursuant to the laws of the state of New York, against the bankrupt, and on the 9th of April obtained an order for the appointment of a receiver, and on the 25th of April a receiver was appointed by the court, to whom the bankrupt on the 27th of April assigned his choses in action, effects, &c. On the 16th of February this bankrupt presented his voluntary petition to this court, to be declared bankrupt, and a decree of bankruptcy, thereupon, was rendered, on the 30th of April.

The general assignee claims, that the estate of the bankrupt, as it was when his petition was presented, became vested in him, by force of the decree in bankruptcy, and the judgment creditor insists, that by virtue of his proceedings in the court of chancery, he acquired a prior lien on the property, which is preserved to him by the bankrupt act [of 1841 (5 Stat. 440)]. The proviso of the second section is "that nothing in this act contained, shall be construed to annul, destroy or impair, any lawful rights of married women, or minors; or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the states, respectively, and which are not inconsistent with the provisions of the 2d and 5th sections of the act." It may be proper to observe, that the term "laws of the states," employed in the act of congress, is not to be understood as embracing the judicial decisions, or rules of the courts; but is limited to local statutes, and local usages of a fixed and permanent operation. Swift v. Tyson, 16 Pet. [41 U. S.] 18, 19. The statutes are, however, to be read in connection with the constructions of the highest local courts; such judicial exposition being regarded as becoming part of the acts by defining their true meaning. Bank of U. S. v. Daniels, 12 Pet. [37 U. S.] 32.

I regret to find the decisions of this court do not harmonize with the learned and forcible reasoning of the circuit court of the First circuit in respect to the import and application of the phrase "any liens" used in the proviso above quoted. The term has been understood and expounded here in several cases, as used in a familiar sense, and as comprehending all privileges and charges upon the thing recognized by local statutes, or long established usages of the principles of general law, and the court has not stopped to weigh the qualifications or restrictions English judges have been disposed to attach to the subject. In that view it has not been deemed important to analyze and collate the decisions of the Eng-

lish courts of law, to ascertain to what extent liens are recognized and upheld; there the act of congress, being understood to have direct reference to the law in this respect as it exists in the particular state, irrespective of the source from which it may have been derived. The common law decisions, it was thought, would therefore only supply evidence of the state law, in absence of any definite statute, or usages, existing in this state on the subject; or at most could be resorted to, but for illustration, or as an exponent of provisions, derived from, or familiar to the common law.

Judge Story, in his very able discussion of the subject,—Foster's Case [Case No. 4,960],—seems to regard the English rule as the controlling consideration, and to adopt the conclusion that, where there is no possession of the thing, actual or constructive, there can be no lien asserted in regard to it; and the logical tendency of the reasoning, if not the expressed result is, to deprive judgment creditors of priority of payment under the bankrupt act, out of the real estate bound by their judgments, there being no possession accompanying the lien claimed. Without the advantage of that decision to guide its judgment, this court had adopted a different conclusion with respect to the meaning and operation of the word lien, here employed by congress, and had accepted it as importing any charge fixed by law upon the property, or imposed by the party in consonance with existing laws and usages. Should this case, or any future one, present the point, so as to bring the views of this court in direct collision with the opinion of the circuit court of the First circuit, I should not assume to execute my own conclusions, but shall adjourn the point to the circuit court, having immediate supervision of the decisions of this court.

The question raised by this case is, whether the judgment creditor, by virtue of his proceedings in chancery, acquired a lien on the property and effects of the bankrupts, so as to prevent their vesting in the general assignee on the rendition of the decree of bankruptcy. The petition presented to the court as the foundation of the present motion, does not designate the property and effects of the bankrupt, which passed to the receiver by means of the chancery suit. On the argument, however, it seemed to be conceded that the property consisted wholly of effects not subject to execution, choses in action, credit, &c. &c. It has been decided by the judges of this court on an injunction bill filed in the circuit court, that the general principles of chancery law, will not sustain a creditor's bill, to secure, or act, upon property, not liable to execution at law; and also, on a review of the state decisions, the judge adopted the conclusion, that no doctrine was established in the state chancery upholding such jurisdiction, anterior to the passage of the Revised Statutes. Lamson v. Mix [Case No. 8,034]. But if the point has been definitely decided by the state courts in favor of the

jurisdiction, such decision, within the rules declared by the supreme court [Swift v. Tyson] 16 Pet. [41 U. S.] 18, would not become a state law, and as such obligatory upon the courts of the United States. A bill filed by a judgment creditor, independent of the statute, to arrest his debtor's effects not liable to execution, and apply them in satisfaction of the judgment, would be regarded by this court as a void proceeding, and as creating no lien or right in respect to assets so proceeded against. U. S. v. Sturges [Case No. 16,414]; McFerran v. Jones, 2 Litt. (Ky.) 222.

The decision of the question of lien in this case must accordingly rest upon the provisions of the Revised Statutes of this state, and the construction given the act by the state courts. The act provides that a creditor situated as Heckscher is may file a bill in chancery against his judgment debtor, and any other person, to compel the discovery of any property, or things in action belonging to the judgment debtor, or money, &c., due to him, or held in trust for him, and to prevent the transfer, or the payment, or delivery, thereof, to the defendant, and shall have power to decree satisfaction of judgment out of such effects as shall be discovered by the proceedings in chancery, whether originally liable to execution or not. 2 Rev. St. pp. 173, 174, §§ 38, 39. It is very clear that the statute does not assume to act directly upon the assets of a judgment debtor, to bind them specifically in the way real or personal estate is bound by judgment and execution. A power is conferred upon the court of chancery, to entertain a suit of a special character, founded upon the equity therein designated. Whether this be an inherent or only a statutory jurisdiction of the court, the legislature has pointed out plainly its officers, and the method of its exercise, and the question is, whether it be a necessary incident to such suit, that the particular property, sought to be controlled, should be definitely bound by it from its inception. There are cogent considerations arising from the wording of the statute against this acceptation of its import: First, the action essentially looks to a disclosure of assets belonging to the judgment debtor, and not to the arrest of such as are patent and known, and accordingly the court is empowered "to compel a discovery." Until this discovery is made, the supposed lien must be floating and in abeyance, and is, moreover, to remain contingent, without anything to rest on, whilst the court is considering whether the property discovered can be made subject to the demand. A lien, ex vi termini, presupposes a definite object on which it acts; and, laying out of view other considerations, how can it be, in a legal sense, asserted that a lien can subsist on the indebtedness or liability of third persons to the judgment debtor, which the creditors' bill in this case seeks to have appropriated to the judgment debt? Second. When a discovery is made, the court has

power given to it to prevent a transfer of every description of property belonging to the defendant. This power would be unnecessary, if the property was already bound by the commencement of the action; nothing more would then be required than an order that the specific thing claimed by the lien should go to its satisfaction. But the tenor of the section manifestly denotes that the power is not conferred to uphold and effectuate a lien as such, but to detain every species of property and interest, tangible or equitable, where it may be operated upon when by the ultimate judgment of the court it shall be found liable to the applications sought for. Third. The fund or property is not necessarily allotted to the prosecuting creditor, after it is acquired by the receiver. The chancellor says, "The receiver is the officer of the court, and holds the fund subject to the equitable rights of all parties to be disposed of under the order of the court."

These suits are employed as inquisitions, acting upon a defendant or his supposed trustee by a searching scrutiny, to ascertain if, perchance, effects of the judgment debtor may not be brought to light. They are ordinarily merely experimental. The receiver may even be appointed before it is known that there is any property, and his office, when property is discovered, is nothing more than to collect and preserve it, pending the litigation. Bloodgood v. Clark, 4 Paige, 574. Even his appointment, therefore, does not indicate any devotion of particular property by the judgment of the court to the objects of the suit, nor does the commencement of a suit seem to be regarded in the state courts as settling the right of priority, as between different parties instituting these creditors' actions, but the matter is open to adjustment by the court upon the general equities subsisting in the cases, and established at the hearing. Osborn v. Heyer, 2 Paige, 342. This power of controlling, or disposing of the fund upon considerations of the equities of all parties, would seem to exclude the idea of a specific lien on it in favor of any one. This description of action will undoubtedly protect every subsisting lien of a judgment or execution creditor against subsequent assignments of the party, or those made by operation of law,—U. S. v. Sturges [Case No. 16,414],—and may aid such lien in rendering available under it, residuary trust interests, which could not be sold by the execution at law. McDermutt v. Strong, 4 Johns. Ch. 687. But that species of equitable jurisdiction and relief is widely different from one, which imposes an original lien on property by force of filing a bill merely. The act in terms in no way declares the existence of the suit shall have such effect, and the remaining inquiry is, has it been adjudged by the state courts that a creditor's bill, by force of the provisions of the statute, imposes a specific lien on the estate of the defendant, subject to the procedure? I find no such express adjudi-cation nor any principle established that necessarily involves that construction of the act.

The chancellor seems to consider the rule to have been so declared by Lord Hardwicke. Beck v. Burdett, 1 Paige, 309. But it is clear that the English chancery regarded a creditor's bill as of no force, different from any lis pendens respecting a particular thing which will not be so suffered during such suit to be transferred to another, and taken out of the jurisdiction of the court. Edgell v. Haywood, 3 Atk. 356, 357.

And it is to be remarked that the observation of the chancellor in Beck v. Burdett must have been offered as a mere suggestion, because the decision was, that the complainant's bill did not bind the property in that case. The repetition of like language in Edmeston v. Lyde, 1 Paige, 639, 640, propounds no different doctrine; neither the facts nor the scope of the argument requiring more than the determination of the point whether a single creditor was entitled to the entire fruits of the action prosecuted by him, or if he must share them ex æquo bono with others, standing in equal relation with himself at law, to the judgment debtor; and both those cases were decided under the general law, before the Revised Statutes went into operation, and are not, therefore, to be regarded as any exposition of the act in question.

The term "lien" does not seem to be used in the New York or English cases, in a strict and technical sense, as denoting a fixed security in the thing, but rather to express a priority of right acquired by the prosecuting creditor over others, standing in other respects on legal and equitable equality with him. They regard the lis pendens as over-riding all subsequent transactions, and securing to the prosecuting creditor the enforcement of the remedies he might claim, had the estate or means of the debtor continued to the decree in the same situation they were when the bill was filed,—Hadden v. Spader, 20 Johns. 564; McDermutt v. Strong, 4 Johns. Ch. 687; Lucas v. Atwood, 2 Stew. (Ala.) 378; Mechanics' Bank v. Seton, 1 Pet. [26 U. S.] 309; 1 Story, Eq. Jur. 393, 396,—and accordingly speak of such operation of the suit as a lien. The distinction, however, between a right to priority of payment, out of a given fund, or particular property, and a specific lien thereon, is plainly recognized by the authorities, and is exemplified in the relation of the United States and their sureties to a public defaulter or a debtor, in particular cases, on revenue bonds, &c., [U. S. v. Hooe] 3 Cranch [7 U. S.] 73; U. S. v. Clark [Case No. 14,807]; U. S. v. Munroe [Id. 15,835]; Conard v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 386; U. S. v. Pacific Ins. Co., 6 Pet. [31 U. S.] 262; Harris v. D'Wolf, 4 Pet. [29 U. S.] 147; Conard v. Nicoll [Id. 291]; Beaston v. Farmers' Bank, 12 Pet. [37 U. S.] 102,—and in other instances of chancery jurisdiction; as the right of partnership creditors to payment out of partnership effects in cases of insolvency, before the private creditors of any separate

partner,—1 Story, Eq. Jur. 625,—and the converse in respect to separate creditors and separate effects of the partners; where the right to priority of payment out of the fund is maintained, although the cases explicitly declare that such parties have no lien. 6 Ves. 126; 11 Ves. 3; 17 Ves. 521. Chancery, in the ordinary exercise of its jurisdiction, will give efficacy to this prior right of payment by enjoining any transfer of the fund or property pendente lite (2 Story, Eq. Jur. 190, 192) in as ample a manner as is authorized by the state statutes. Comparing these familiar incidents of a chancery suit with the proceedings authorized under the state statutes, it would seem manifest that nothing was contemplated in the latter beyond placing the judgment on a like footing with suitors in that court, pursuing a similar remedy. If he does not come into court with a lien, by means of his judgment, or execution on property sought to be made available thereto by aid of equity, his suit enures to the creation of the lien no further than on any other original bill in the court, where superior diligence would be recognized as giving right to priority of payment. And there would seem to be no reason for extending by construction the operation of the statute in this respect, so as to confer a priority on this class of suitors, distinguishing them from other parties possessing precisely equal equities. In the absence of a clear and settled interpretation of the statute by the state tribunals giving it the effect demanded in the present case, I am no way inclined to execute it by innovating upon the established rules of chancery, or by imparting benefits under it to judgment creditors, beyond those administered by the accustomed laws of the court, to parties invoking its aid on grounds of like equity, and shall therefore, hold, that the creditor's bill in this case, created no specific lien on the property of the bankrupt, and that in consonance with the ordinary principles of the court, it only secured to the complainant a priority of payment out of the fund which may be ultimately adjudged liable to the debts of the judgment debtor. This, it appears to me, is the plain and sensible bearing of the spirit of the decisions upon the subject.

Chancellor Walworth seems to have hesitated and struggled in his own mind with the question, whether equity did not demand a pro rata distribution of the debtor's estate amongst his creditors pursuant to the course of chancery in similar administration, and in the end yielded the point to the exclusive advantage of the prosecuting creditor, upon consideration of his diligence and having incurred all the risk and expense of the prosecution. 1 Paige, 639. This privilege of priority of payment not only must yield to rules of equal distribution, established by positive law as a bankrupt, or insolvent law,—Lucas v. Atwood, 2 Stew. (Ala.) 378,—but is adopted by the courts in the absence of a bankrupt law, essentially with a view to approximate in degree to the equity of a code which devotes all the means of a debtor

without regard to the character or situation of his interest to the payment of his debts. Hadden v. Spader, 20 Johns. 564.

I think, therefore, the judgment creditor in this case, has no rightful authority over the funds of the bankrupt, by means of this creditor's bill, which can withdraw them from distribution in subordination to the bankrupt act, and appropriate them exclusively to his own debts.

Nothing more is presented by the petition and motion for the decision of this court, than the general question, whether filing a creditor's bill in the state court of chancery constitutes a lien, or other security, on the effects of the bankrupt, valid by the laws of the state, and which by virtue of the last proviso of the 2d section of the bankrupt act prevents such effects passing to the assignee of the bankrupt. I am of opinion that it does not. I apply this decision in its broader sense, and hold, that such creditor's bill creates no lien, or security, on real or personal property, and do not, therefore, discuss the point, whether any other than tangible property can be brought within the saving of that proviso. The delivery of the effects and property over to the receiver, works no change that strengthens the right of the judgment creditor.

If no bankruptcy existed, the question would yet remain to be settled by the court of chancery on hearing, whether this property, or any part of it, was applicable to this judgment. That point has not been decided in the state court, and the property accordingly remains with the receiver as the depository of the law until the rights of all parties may be settled. I regard it of no consequence that the steps in the state court preceded a few days those in the bankrupt court, and that the creditor perfected an assignment to the receiver two days before the final decree in bankruptcy. It was no longer a race of diligence between competitor creditors, but the fiat of the act of congress interposed the paramount and conclusive rule of equality, shielding the property of the bankrupt from transfer or encumbrance after his bankruptcy, and dedicating it to the common use of his creditors. The decree of bankruptcy passes all rights of property of the bankrupt to the assignee instanter on its entry; and it has been uniformly held in the bankrupt courts, that every interest the bankrupt possessed when proceedings in bankruptcy were instituted passes to the assignee by force of the decree. This doctrine has been repeatedly declared in this court, and with great strength and fullness in the Massachusetts district. Ex parte Foster [Case No. 4,960]. The relief sought in this instance is an order on the receiver to deliver the effects in question to the general assignee. This application, as a mere motion, in my judgment ought to have been addressed to the court of chancery. The receiver is the officer of that court, and detains this property in that capacity. This court has,

on several occasions, declined to interfere with, and arrest. the property of a bankrupt pending his voluntary application and prevent its seizure on execution, or delivery in chancery to a receiver, on the ground, that, until a decree of bankruptcy, there was no exclusive power over the property vested in this court, and also that the state courts would be controlled in their proceedings by the act of congress, and would deny parties any advantages or remedies which might contravene the spirit of that law.

The appeal, in the first instance, to the court of chancery in cases like the present, to reclaim property under its custody, should be required no less after a decree in bankruptcy than before.

What might, previous to a decree, be only matter of precaution upon which the court of chancery would act with a view to existing and possible interests of all concerned, would, after a decree in bankruptcy, become ripened into a legal and vested right in the assignee and creditors which that court would be always ready to recognize and assist. It moreover comports more with the comity due from one independent tribunal to another, to refer to the action of each of those matters subject to its particular control, than for either to attempt to act coercively in respect to the other. A peremptory order upon the receiver in chancery, controlling him in the execution of his trust, would be in effect a mandate on the court; and I am not satisfied that the bankrupt act gives any such authority to this court, nor can I suppose, if the power is unquestionable, any occasion will ever arise in which its employment can become necessary. Should the court of chancery decline ordering the delivery of this property to the assignee, his remedy at law against the receiver would be in no respect barred or hindered thereby.