CURLEE v. REMBERT.

1. INSOLVENCY—VOID DEED—CREDITORS.—Whether a voluntary conveyance is void as to existing creditors, depends generally upon the proof of insolvency furnished by the effort to subject his property to the payment of his debts; but where an unappealed decree has pronounced such a conveyance void, it is thereby made void as to all existing creditors.

2. RELEASE OF LIEN—SUBSEQUENT JUDGMENTS.—The release of a judgment lien on land sold by the debtor cannot, in the absence of fraud, operate, in whole or to the extent of the price of the land released, to postpone the lien, which such judgment has on other lands, in favor of other judgments afterwards obtained on then existing contracts.

3. VOID DEED—ACTIVE CREDITOR—SENIOR LIENS.—Where a junior judgment creditor succeeds in his action to have a voluntary deed made by his debtor vacated, and the deed is declared to be void, the land covered by the deed becomes subject to all legal liens in the order of their priority, even though the complaint was not framed so as to provide for other creditors, and the senior judgment creditor acquiesced in the deed, and did not contribute to its annulment.

Before FRASER, J., Fairfield, September, 1891.

This was an action commenced January 18, 1889, by N. C. Robertson, administrator *de bonis non* of Lawrence J. Cook, against Emeline Rembert and her children and Thomas G. Robertson, to set aside a deed made by Thomas G. Robertson to Emeline Rembert and her children on the consideration of love and affection and one dollar. Pending the action, N. C. Robertson died, and James R. Curlee, his successor in the office of administrator, was substituted as plaintiff. Upon the testimony submitted to him, Judge A. P. Aldrich decreed, *inter alia,* as follows:

"1. That the deed of conveyance set forth in the complaint as made, executed, and delivered by Thomas G. Robertson to Emeline Rembert and her children, conveying 440 acres of the land belonging to said Thomas G. Robertson at and prior to the date of said conveyance, viz., the 16th day of March, 1868, be vacated and set aside as void against the claim of the said plaintiff; that the said deed be delivered up to the clerk of

this court to be cancelled, and that the said clerk do enter upon the record of said deed in his office, as register of mesne conveyance for Fairfield County, a memorandum that said deed has been cancelled by the order of this court."

The decree further directed the land to be sold, and all creditors of T. G. Robertson to be called in. This was accordingly done, and under the call for creditors, a judgment was presented which had been confessed by T. G. Robertson to Sarah H. Jones, his mother-in-law, on March 16, 1868, and had been assigned by Mrs. Jones to Thomas M. Rembert, husband of Emeline Rembert, in trust for Thomas W. Robertson and Martha M. Robertson (now Mason), children of T. G. Robertson, on November 25, 1868. The Circuit decree was as follows:

This case came before me on a report on claims. The action was brought by the administrator of a deceased creditor of Thomas G. Robertson to set aside a conveyance of land for fraud. The action was not brought in the usual way, on behalf of all creditors who would come in and contribute, &c., but in the name of plaintiff above. The conveyance was held to be void, and in derogation of the rights of creditors; and the land has been sold, and the proceeds are now in court, and creditors have been called in. There are only two claims which have been presented, and the only contest is as to which of these two is entitled to be first paid.

1. A judgment of Sarah H. Jones v. Thomas G. Robertson, dated 16th March, 1868, for $2,799.76, and renewed 17th September, 1881. This judgment has been assigned to Martha R. Mason and Thomas W. Robertson. On 3d February, 1890, there was paid on this judgment, out of the proceeds of land sold by the sheriff, to Martha R. Mason $958.57, and to Thomas W. Robertson $958.57—$1,917.14 in all. Costs have been paid.

2. A judgment of N. C. Robertson, administrator de bonis non of Lawrence J. Cook, dated 30th December, 1868, for $1,440.09, and $16.50 costs. On this has been paid, 26th January, 1871, $300, and on 30th November, 1873, $400; total of $700. Judgment renewed 29th March, 1878.

On 12th September, 1868, Thomas G. Robertson conveyed a

tract of land to John P. Matthews, jr., in consideration of $2,000. On this conveyance Mrs. Jones, the plaintiff, and then the owner of the first of the above judgments, released her lien on the said land, held by her as the owner of the judgment. This release was voluntary, and in it there is expressed by Mrs. Jones a confidence in the sufficiency of the security retained for the payment of the debt.

I propose only to announce my conclusions. It may be that an action brought in the name of one creditor holding a lien, is not demurrable, because of the omission to bring the action in behalf of the plaintiff and all others; but I am satisfied that when this is the form adopted, it is the duty of the court to call in all creditors having claims on the property. Any other practice would lead to confusion, and, at least, to a very unseemly scramble in the courts, as to which creditor would be the first to commence these proceedings in cases of fraud. The fact, therefore, that the plaintiff, in the main cause, or his successor, commenced and successfully conducted the action to set aside the conveyance for fraud, gives no claim to priority of payments.

I find no evidence of fraud or collusion with Thomas G. Robertson on the part of Mrs. Jones, or those who claim under her, which can invalidate her judgment or destroy her lien on the property of Thomas G. Robertson. At the time Mrs. Jones released her lien on a tract of land covered by the lien of her judgment, the Cook judgment had not been obtained, and there was no lien whatever in the favor of the debt on which it is based, or the property of Thomas G. Robertson. The proposition of law, on which the owner of the second judgment (the Cook judgment) rely, seems to be this: That a creditor who holds a lien, and releases it, or a part of it, can not set up that any other transaction of the debtor is fraudulent as to him in a contest with other creditors, who, after the release, obtain liens on the property. To this I cannot assent. I do not see how, in the absence of fraud, the release of any portion of the security held, can in any way interfere with all other legal or equitable remedies which the creditor does not release. The case would not be the same where the rights of other creditors,

holding liens *at the time of the release*, are involved, which is not the condition of things now before me.

It is, therefore, ordered and adjudged, that, after the payment of the fees heretofore allowed by this court, and all proper costs chargeable thereon, the fund in court in this case be paid first to the balance unpaid on the judgment of Sarah H. Jones *v.* Thomas G. Robertson, as above referred to; then to the judgment, above referred to, of N. C. Robertson, administrator *de bonis non*, *v.* Thomas G. Robertson, and if there be any surplus, that the same abide the further order of this court.

Plaintiff appealed.

*Messrs. McDonald, Douglass & Obear*, for appellant.

*Mr. A. S. Douglass*, contra.

September 24, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. On March 16, 1868, Thomas G. Robertson, in consideration of love and affection, conveyed a tract of land (440 acres) to his daughter, Mrs. Emeline Rembert. He was largely indebted at the time, and on the same day he confessed a judgment to his mother-in-law, Sarah S. Jones, which was regularly entered as of its date. On September 12, 1868, the debtor Robertson conveyed to one Matthews twenty-eight and one half acres of other land, receiving therefor $2,000. This land was covered by the lien of the judgment of Mrs. Jones, and she, stating in writing as follows: "in consideration of my regard for the interest of my son-in-law, and my reliance upon the sufficiency of my security after the release," &c., released the lien of her judgment on this land sold to Matthews.

On November 25, 1868, Mrs. Jones transferred her judgment to Thomas W. Rembert in trust, &c., and thereafter, on December 30, 1868, the administrator of one Cook obtained a judgment against the said Thomas G. Robertson, and issued execution, which, after being renewed from time to time, was finally returned *nulla bona*; and, on January 18, 1889, the plain-

28—37

tiff, as administrator, instituted these proceedings against Eme-
line Rembert and others, to set aside the deed of land (440 acres)
executed in her favor, by her father, Robertson, as being with-
out consideration, fraudulent, and void.

The action was not to marshal the assets of a deceased
debtor, in which all creditors must be called in; but, so far as
the pleadings show, for the benefit of the plaintiff alone.   His
honor, Judge Aldrich, heard the case, set aside the deed, or-
dered the land sold, and, after paying taxes, costs, &c., the
officer was directed to hold the remainder of the proceeds of
sale subject to the future order of the court.   He also ordered
the referee to call in the creditors of Thomas G. Robertson, to
prove their demands, before Glenn W. Ragsdale, Esq., who
was directed to take testimony as to the rank, priority, amount,
and validity of the several claims presented, &c.   The referee
took the testimony, which is in the brief, and reported, that
only two claims were presented : (1) the judgment of the plain-
tiff—balance $1,889; and (2) the judgment confessed to Mrs.
Jones—balance $5,401.03; and the only contest was, which of
them was to be paid *first*.   The cause came on for a hearing
by his honor, Judge Fraser, who held, that the fund in court
should be first paid to the balance due on the judgment of Mrs.
Jones (that is, confessed to Mrs. Jones), and then the balance,
if any, on the judgment of the plaintiff.   From this decree the
plaintiff appeals upon the following exceptions :

1. That his honor should have held, that the deed of Thomas
G. Robertson to Emeline Rembert was not fraudulent and void
as to the owners of the judgment of S. H. Jones, said judg-
ment at the time of said conveyance constituting a first and
exclusive lien upon the entire balance of the property, being
at that time entirely sufficient to pay said Jones judgment.

2. That his honor should have held, that the release of the
lien of said judgment on $2,000 of property of judgment debtor
by Mrs. Jones, by a written instrument, wherein she declared
her confidence in the sufficiency of her security by lien on
the balance of the judgment debtor's then remaining, estopped
the said Sarah H. Jones and her assigns from attacking the

validity of said deed, or from claiming the proceeds arising from the land.

3. For that his honor should have held, that the plaintiff was entitled first to the proceeds of sale, he having been first in diligence in the discovery of the fraud, and in setting aside the fraudulent deed.

4. That his honor erred in holding, that the proceeds of sale, after payment of costs and fees, should be first applied to the payment of the Jones judgment.

5. That his honor should have held, that the Jones judgment could not share at all in the fund realized from the attack upon the validity of the Rembert deed.

6. That his honor should have held it highly inequitable to permit the owners of the Jones judgment to reap the fruits of annulling the Rembert deed, when they not only did not contribute to the victory, but resisted the fight, and acquiesced all the while in the validity of said deed.

7. That his honor erred in holding, that in equity the owners of the Jones judgment could not be required to credit the release of the property sold *Matthews of the value of $2,000*, before claiming the fund realized from the successful attack on the Rembert deed.

The decree of the Circuit Judge is so clear, that it is difficult to add any thing to it. The exceptions, taken together, seem to make *three* questions, which we will briefly consider in their logical order.

*First.* It is contended that, although the conveyance of the debtor to his daughter, Mrs. Rembert, was void as to the plaintiff's claim, it was not void as to the judgment confessed to Mrs. Jones, for the reason that at the time it was executed, the debtor Robertson had ample property to pay his debts. Whether the voluntary conveyance of a debtor is void as to existing creditors, must depend, with inconsiderable exception, upon the event—the ultimate insolvency of the debtor. "A voluntary settlement is void as to existing creditors, if the donor afterwards proves to be insolvent." *Izard* v. *Middleton*, Bail. Eq., 228. See *Richardson* v. *Rhodus*, 14 Rich., 95. The decree in the case (Judge Aldrich's) pro-

nounced the conveyance to Mrs. Rembert void, without limitation or qualification, and called in the creditors of the debtor. There was no appeal, and it is not plain how we can consider the conveyance void as to the plaintiff's judgment, and *not* as to the judgment confessed to Mrs. Jones. The question is not as to what was intended by the parties, but simply as to the *effect* of the decree. It seems to me that, being void as to one, it was void as to all existing creditors without discrimination.

*Second.* It is, however, further urged, that Mrs. Jones fully concurred in the conveyance to Mrs. Rembert, and that the insolvency of Robertson, the donor, was caused, in part at least, by her lifting the lien of her judgment from the land sold to Matthews; and that such conduct should, in equity, postpone her judgment, at least to the extent of the consideration ($2,000) realized for that land. It strikes me that there would be great force in this view, if the plaintiff's judgment had *been in existence* at the time of the Matthews transaction. That was before the plaintiff recovered his judgment, which never had *a lien* upon the land sold to Matthews. We, therefore, feel constrained to concur with the Circuit Judge, when he said : "I do not see how, in the absence of fraud, the *release* of any portion of the *security* held can in any way interfere with other legal or equitable remedies, which the creditor does not release." As was said in *McAfee* v. *McAfee*, 28 S. C., 223 : "At the time of the conveyance to Moore (*Rembert*) of part, the Wright (*Curlee*) judgment had not been rendered. There was no other lien but the mortgage (Jones judgment), and, as we suppose, the parties at that time could, if they saw fit, cancel the old mortgage and execute a new one, covering only the land not conveyed to Moore. And if so, why could they not reduce the quantity of land under the old mortgage? It is only after receiving notice of such liens (subsequent) that the mortgagee becomes responsible for his acts in releasing portions of the lands."

*Third.* But it is still further earnestly and ably insisted, that his honor should have held it "highly inequitable to permit the owners of the Jones judgment to reap the fruits of annulling the Rembert deed, when they not only did

not contribute to the victory, but resisted the fight, and acquiesced all the while in the validity of the said deed." It is urged, that to give the owners of the Jones judgment all the fruits of a victory obtained against their efforts, would be to reverse all the equities of the case, and to violate especially that favorite rule of the court, expressed by the phrase, *Vigilantibus, non dormientibus, jura subveniunt.* The point is, that these are *equitable assets,* and should be distributed *equitably;* that is to say, not by the unbending legal rights of the parties, but according to the merits of vigilance and activity which may have been exhibited by the parties, respectively, in uncovering and securing the said assets, to be determined, as we suppose, in the discretion of the judge acting as chancellor. It must not, however, be overlooked that the principles of equity do not exist solely in the floating discretion of the chancellor, however wisely exercised, but that court proceeds upon fixed and established rules, as well as the court of law, one of which is, that "Equity follows the law." We do not think it a controlling circumstance of the case, that the prayer of the complaint was limited to the plaintiff, and did not state in the usual form that it was also in behalf of creditors, who would contribute to the expenses, &c. As was said by Chancellor Dargan in the case of *Heath* v. *Bishop,* 4 Rich. Eq., 58: "Whenever this court takes hold of an equity for the purpose of giving relief to a creditor, it will do so in behalf of all the creditors, and will marshal the fund among them according to their respective rights. It is a wholesome rule of practice, and will be insisted on." Hence, his honor, Judge Aldrich, in conformity with this practice, called in the creditors.

The industry of the plaintiff's attorneys enabled him to cite to the court several cases from other States, which seem to favor his view, that the vigilant creditor, pursuing his claim, acquires a preferable equity, which attaches and becomes *a special lien* by the filing of his bill. We have not had access to all the cases referred to, but we incline to think that there must be some special provisions in the statutes of those States, authorizing a lien upon the filing of a creditor's bill, or the cases in which the questions arose were in reference to *mere choses* or

other intangible property, upon which there was not, and could
not be, legal *liens*. However that may be, after carefully looking
through our own cases, we think it is well settled, in this State
at least, that the proceeds of a tract of land, title to which has
been declared void as to creditors, is distributed in the Court
of Equity among the creditors of the debtor, according to their
legal rights and priorities. This rests largely upon the ground
that a fraudulent conveyance is no conveyance at all, but a
mere nullity, the title remaining all the while in the debtor,
and subject to all legal liens, as if the fraudulent deed never
existed. We do not think it necessary to elaborate the ques-
tion, or to do more than quote the opinion of the old Court of
Appeals in Equity, prepared by Chancellor Dunkin in the case
of *Gracey* v. *Davis*, 3 Strob. Eq., 58, which in short compass
states the doctrine and the reasons for it: "Where a deed is
set aside as interfering with the rights of creditors, it is, as to
those creditors, as if it had never existed.  *  *  *  The effect
of setting aside the deeds is to leave the creditors to enforce
their claims, and obtain satisfaction according to their legal
priorities; or, if this court takes charge of the fund, to direct
them to be paid according to their legal rank. This rule has been
well established from an early period. See *Austin* v. *Bell*, 20
Johns., 442; *Codwise* v. *Galveston*, 10 *Id.*, 508. Nor is the court
aware of any decision to the contrary. The principle is fully
recognized by the court in *McDermutt* v. *Strong*, 4 Johns. Ch.,
687, and has been uniformly regarded by our own courts, as
may be seen by reference to the cases of *McMeekin* v. *Edmonds*,
1 Hill Ch., 293, and *Anderson* v. *Fuller*, 1 McMull. Eq., 34. If,
as in *LePrince* v. *Guillemot*, 1 Rich. Eq., 220, the assigned estate
has been sold, and only the fund was in the hands of the assignee
when judgment was rendered, the judgment created no lien,
and the judgment creditor was held to be entitled to no priority.
But in the case before the court, the property was subject to a
lien until the sale by the commissioner, the voluntary deed of
the debtor being regarded as a nullity," &c.

The judgment of this court is that the judgment of the Cir-
cuit Court be affirmed.