## THE GERMAN AMERICAN SEMINARY v. ALEXANDER A. SAENGER, EXECUTOR, ET AL.

[See 43 Mich. 105.]

*Judgment creditor's bill — Death of debtor — Injunction—Lien— Appointment of receiver.*

1. When a man dies, *all* of his property not held by some *definite* lien is required by law to be applied *ratably* in payment of *all* of his debts.

2. The usual practice in suits by judgment creditors is to obtain in due season, where the facts warrant it, the appointment of a receiver, who is to collect and apply the assets. The statute does not, nor do the rules, declare any lien to be created by merely filing a creditor's bill; and until the debtor is enjoined from dealing with his property there is nothing in the law to prevent any honest disposal of it, and until a receiver is appointed there is nothing which will act on the property itself.

3. Except for the statute, a judgment creditor's bill is like any other suit, a mere *personal* litigation, to which the death of the judgment debtor puts an end where no lien has attached. *Jones v. Smith,* Walk. Ch. 115.

Appeal from superior court of Detroit. (Chipman, J.) Argued April 26, 1887. Decided June 9, 1887.

Judgment creditor's bill, and in aid of execution. Decree below reversed and bill dismissed. The facts are stated in the opinion.

*F. A. Baker* and *Alfred Russell,* for complainant.

*Henry M. Duffield* (*Isaac Marston*, of counsel), for defendants.

CAMPBELL, C. J. The original bill in this case was a judgment creditor's bill on execution unsatisfied, and also in aid of a levy on lands, to collect a money decree granted by the circuit court for the county of Midland against Bernard Stroh for $14,006, November 17, 1876. In November, 1877, this was reduced by a credit of $2,666.49, which had not been properly allowed in the computation. The original bill was filed November 29, 1879. It is not printed in the record, and we have only the amended bill. Subpœna was not issued until February 24, 1880. July 9, 1880, the defendants who had appeared demurred, and on September 25, 1880, the demurrer was sustained, with leave to amend. The amended bill was filed the same day, waiving an answer under oath. No injunction or receiver was prayed for, and none was granted. The amended bill was demurred to on October 15, 1880, and argument had May 16, 1881. No decision was made, and no steps were taken by any one in the cause, until April 27, 1885, when the demurrer was overruled and defendants ordered to answer, except that on April 22, 1885, complainant filed proof, by affidavit, that Bernard Stroh died in June, 1882, testate, and that Saenger was his executor.

On April 30, 1885, an *ex parte* order was obtained reviving the suit against Saenger. The other defendants were not notified of this application. On May 2, 1885, without further notice, Westover's default was taken. On May 18, 1885, the demurring defendants moved to vacate the order requiring them to answer, on the ground of the four-years' delay, and of the death of Bernard Stroh. This motion was denied, and answers were put in, and testimony taken, saving objections. Saenger appeared, but did not answer. No bill of revivor was filed, and the order of revivor entered was made *ex parte*, without notice, and with no showing of the

contents of Stroh's will, or the date of its probate, or of Saenger's appointment. An order to take proofs in open court was entered before all the parties had appeared or been defaulted, and the default of some of the parties was not taken until several days after the hearing.

The underwriting to the subpœna in this case recited that a personal decree was sought against Bernard Stroh, and as to the other defendants the bill was filed only to reach interests·in property, and no further relief.

Upon the final decree, it was decreed that two conveyances be set aside, and property levied on sold. A personal decree was granted against Clotilde Stroh, Julius Stroh, and Bernard Stroh, the younger, jointly and severally, for $20,867.02, subject to reduction by what might be realized on execution sale. Decrees for accounting, looking to a personal judgment, were rendered against all of the defendants. Appeal is taken by all of the Strohs, Saenger, Welcker, and the Lion Brewing Company.

During the pendency of the suit several changes took place, not introduced by any pleading into the record, but shown as facts. Among these was the expiration of the Lion Brewing Company's charter, several transfers of stock, and some other matters altering the position of affairs.

The property levied on, in aid of which levy the bill was filed, was a quantity of lands deeded to William Westover, trustee, in November and December, 1875; nine parcels of land conveyed to the Lion Brewing Company, in December, 1875 ; and several lots in Detroit conveyed to Clotilde Stroh, December 13, 1875, at the same time with the conveyance to the brewing company. The decree sets aside the two last-named conveyances, but not the transfers to Westover. Westover was ordered to account for these lands, but no final decree made against him for the proceeds.

No levy was made on any stock or personal property, but an attempt was made to reach this under the judgment-cred-

itor claim on return of *nulla bona*. It consisted of stock in the two defendant corporations claimed to have been fraudulently placed. The fraudulent intent charged was against creditors, and especially complainant, to prevent the debtor's property from being levied on.

Complainant's decree sued on was not obtained until nearly a year after all these land transfers. It was not a decree founded on contract, but charged defendant Bernard Stroh for the proceeds of lands once owned by complainant, which the trustees of complainant had sold, making title to the former wife of Stroh. The sale to her was set aside, on the ground that Stroh, as trustee, could not purchase, and he was adjudicated personally responsible for the timber converted during the period of not far from ten years between the sale and the filing of that bill. It is not claimed he was guilty of actual fraud, or that there was any defect in the sale, beyond his supposed inability to purchase on his own account.

As Stroh did not appeal, of course the decree stands as a judgment. But upon the question of fraud in dealing with his assets several months before this decree was rendered, it becomes important to consider the absence of actual fraud in the land sale thus set aside. Another of the trustees, Dr. Kiefer, who was held responsible for this same transaction, appealed to this Court, and it was here adjudged that the sale was neither void nor fraudulent, and the bill was ordered to be dismissed.

So far as the decree in the present suit sets aside conveyances of lands levied on, we can see no ground for sustaining it. At the date of the conveyances, in 1875, Stroh had held, or then held, real estate valued at several hundred thousand dollars. His wife had been induced to join in the Westover conveyances and some mortgages of large amount, and, when desired to join in the brewery conveyance also, refused to do so without some compensation or security for giving up

her right of dower.   The land conveyed to her was not worth more than 4 or 5 per cent. of what she gave up dower in, and all of that land, whether conveyed or mortgaged, was ultimately lost.   If she had not signed away her dower, it would be worth many times what she got by this conveyance. There was no legal or moral reason why she should not have its full value, or why she should give up what was worth no more.   This conveyance to her was valid.

The brewery lands were, when levied on, subject to mortgage to the Connecticut Mutual Insurance Company, and that mortgage is not attacked.   When it was foreclosed, and the equity of redemption was barred, the levy necessarily fell with it. We find nothing in the record to indicate that Bernard and Julius Stroh, who afterwards bought the property from the insurance company, are not entitled to hold their purchase. But the levy was upon nothing but the equity of redemption, which was entirely barred.   If the complainant has any equities, they do not arise out of the levy, but out of some claim that moneys in which it had equities were invested in these lands.   Even if this were so, which we do not think is made out by proofs, complainant has no rights against this specific land, and still less to hold it under levy.   No execution sale on such a levy would convey title as against the foreclosure.

This leaves nothing to be considered except the effect of the bill as an ordinary creditor's bill on execution returned *nulla bona.*   The levies are not sustained by the decree, except as to the two conveyances which we have just referred to, and nothing remains subject to levy in our view under either of those.

The bill does not describe the execution, or give its date or return, and no proof was made of it in the record.   Without such a showing, it would usually be impossible to come to any satisfactory conclusion.   But, if no other defect should be shown, there might be means of rectifying such an omission upon equitable terms.   We do not care to base a decision

on any matters merely incidental or amendable, and are disposed to consider the merits as far as we can.

So far as the bill indicates definite grounds of proceeding, except as against Bernard Stroh himself, it treats all the other defendants as having become trustees of his assets, and responsible to the creditors who have secured rights against the funds. It is claimed that the Lion Brewing Company had some stock undisposed of belonging to Stroh, and that Clotilde Stroh and her grantees, Bernard, the younger, and Julius, had stock in their names, subject to the same equities, and that Westover had trust funds, which may have left a surplus after carrying out the trust. Welcker and Hauser are claimed to have had stock held equitably in trust. Saenger is brought in as executor.

Had Bernard Stroh, the elder, lived, and had it appeared an execution had been returned unsatisfied against him, the statute would allow his equitable assets to be pursued, wherever they should be. But, when a man dies, all of his property not held by some definite lien is required by law to be applied ratably in payment of all his debts. The usual practice in suits by judgment creditors is to obtain in due season, where the facts warrant it, the appointment of a receiver, who is to collect and apply the assets. The statute does not, and the rules do not, declare any lien to be created by merely filing a creditor's bill. Until the debtor is enjoined from dealing with his property there is nothing in the law to prevent any honest disposal of it, and until a receiver is appointed there is nothing which will act on the property itself. Except for the statute, a judgment creditor's bill is like any other suit,—a mere personal litigation. Until the assets are arrested and held in some way, the death of the defendant leaves them subject to administration. This doctrine was recognized from the beginning. In *Jones v. Smith*, Walk. Ch. 115, it was held that the death of the judgment debtor put an end to a creditor's bill, where no lien

had attached. That must necessarily be so, because all unsecured creditors must stand on the same footing with each other. The authority of that case has never been doubted, and we think it is right.

In the present case one bill had been held bad, and to the amended bill demurrers were pending and undecided when Bernard Stroh died. While this bill was sufficient in its allegations for a bill in aid of execution, it was certainly defective, in tangible allegations, as a bill resting on an execution returned unsatisfied, and no injunction could have been granted without more definite averments, although such averments might have been put in by amendment. But had an injunction been asked for, as it was not, defendants could have contested the facts. While there had been no attempt to get either injunction or receiver, and before any issue of fact was created, the death of the defendant stopped all rights to pursue the assets for the payment of this debt. Any further proceeding should have been in the probate court in the course of administration.

This being so, we do not think it necessary to go further. We are satisfied Stroh did not have complainant in mind when he organized the brewery, and this record does not show that he was at that time troubled by any valid debts that were unsecured, or that he could not, and would not, have provided for complainant's judgment, had it then existed. It is admitted on this record that there was no actual fraud in the dealings out of which the decree sued on arose; and this Court, in *German American Seminary v. Kiefer*, 43 Mich. 105, held there was no fraud in law, and that the transactions were valid. Had the case against Stroh been appealed, it could not have been sustained. It cannot therefore be held that Stroh's transfers were void against complainant when made. Whether he had any interest, at the time the decree was made, which could be reached on other grounds as equitable assets, we shall not consider,

because the whole controversy should have stopped in the circuit court when Stroh died, and there was no legitimate room for these inquiries. This also makes it unnecessary to inquire into the competency of the court to make personal decrees at all on such a record. There was nothing which could allow any relief whatever.

The decree below should be reversed, and the bill dismissed, with costs of both courts.

The other Justices concurred.