119    365
f144    ³291

119    365
157    ¹525
d157    ²526

## BEITH *v.* PORTER.

1. CREDITOR'S BILL—LIENS.
   In this State, the filing of a creditor's bill does not, of itself, give the complainant a lien upon the property as against other creditors. *German-American Seminary* v. *Saenger,* 66 Mich. 249, followed.

2. SAME—DEATH OF DEBTOR—ABATEMENT OF SUIT.
   A creditor's bill, if no lien has attached to the property, will abate on the death of the judgment debtor.

3. FRAUDULENT CONVEYANCES—POWER OF ADMINISTRATOR—CONSTRUCTION OF STATUTES.
   2 How. Stat. § 5884, making it the duty of an administrator, where there is a deficiency of assets in the estate, to sue for property "conveyed" by the deceased in fraud of creditors, is declaratory of the common law, and should be liberally construed, to cover a case where the deceased paid the consideration for property, and had title made to his wife in fraud of creditors.

Appeal from Lapeer; Smith, J.   Submitted October 6, 1898.   Decided February 21, 1899.

Creditor's· bill by Robert Beith against Jessie Porter, Jonathan Porter, and Ann L. Empey.   From a decree dismissing the bill, complainant appeals.   Affirmed.

*William E. Brown* ( *O'Brien J. Atkinson,* of counsel), for complainant, in support of their contention that the filing of a creditor's bill creates a lien as against other creditors, cited the following cases, in addition to those cited in the opinion: *Ballentine* v. *Beall,* 3 Scam. 203; *Lyon* v. *Robbins,* 46 Ill. 276; *Rappleye* v. *Bank,* 93 Ill. 396; *Cole* v. *Marple,* 98 Ill. 58 (38 Am. Rep. 83); *Talcott* v. *Wire & Spring Co.,* 131 Ill. 248; *Young* v. *Clapp,* 40 Ill. App. 312, 147 Ill. 176; *Russell* v. *Bank,* 40 Ill. App. 385; *Storm* v. *Waddell,* 2 Sandf. Ch. 494; *Safford* v. *Douglas,* 4 Edw. Ch. 537; *Edmeston* v. *Lyde,* 1 Paige, 637 (19 Am. Dec. 454); *Corning* v. *White,* 2 Paige, 567

(22 Am. Dec. 659); *Weed* v. *Pierce,* 9 Cow. 722; *Roberts* v. *Railroad Co.,* 25 Barb. 662; *Bank* v. *Shuler,* 89 Hun, 303; *Green* v. *Griswold,* 4 N. Y. Supp. 8; *Jones* v. *Agricultural Co.,* 38 Ark. 17; *Senter* v. *Williams,* 61 Ark. 189 (54 Am. St. Rep. 200); *Newell* v. *Morgan,* 2 Harr. (Del.) 225; *Scott* v. *McMillen,* 1 Litt. (Ky.) 302 (13 Am. Dec. 239); *Scott* v. *Coleman,* 5 T. B. Mon. 73; *Watson* v. *Wilson,* 2 Dana, 406; *Tilford* v. *Burnham,* 7 Dana, 109; *Lucas* v. *Atwood,* 2 Stew. (Ala.) 378; *Dargan* v. *Waring,* 11 Ala. 988 (46 Am. Dec. 234); *McDermott* v. *Eborn,* 90 Ala. 258; *Wallace* v. *Treakle,* 27 Gratt. 479; *Sweeny* v. *Refining Co.,* 30 W. Va. 443 (8 Am. St. Rep. 88); *Clark* v. *Figgins,* 31 W. Va. 156 (13 Am. St. Rep. 860); *State* v. *Bowen,* 38 W. Va. 91; *Gordon* v. *Lowell,* 21 Me. 251; *Hartshorn* v. *Eames,* 31 Me. 93; *George* v. *Williamson,* 26 Mo. 190 (72 Am. Dec. 203); *Pullis* v. *Robison,* 73 Mo. 201 (39 Am. Rep. 497); *St. Louis* v. *Keane,* 27 Mo. App. 642; *Miers* v. *Turnpike Co.,* 13 Ohio, 197; *Petway* v. *Hoskins,* 12 Lea, 107; *Carr* v. *Fearington,* 63 N. C. 560; *Ryttenberg* v. *Keels,* 39 S. C. 203; *Bank* v. *Burke,* 4 Blackf. 141; *McCalmont* v. *Lawrence,* 1 Blatchf. 232; *Claflin* v. *Lisso,* 27 Fed. 420; *Neal* v. *Foster,* 36 Fed. 29; *Chittenden* v. *Brewster,* 2 Wall. 191.

*Stickney & Reed,* for defendant Jessie Porter.

HOOKER, J. The complainant, a judgment creditor of Jonathan Porter, filed the bill in this case to reach a parcel of land alleged to have been bought and paid for by Porter, but deeded to his wife, Jessie Porter, in fraud of the creditors of Jonathan Porter. Execution issued upon the judgment, and was returned unsatisfied, before the bill was filed. Jonathan Porter died soon after this suit was begun, and that fact is pleaded in abatement of the suit; and, upon the hearing upon bill and plea, the bill was dismissed, upon the authority of *German-American Seminary* v. *Saenger,* 66 Mich. 249. The complainant has appealed.

In the case cited, a bill was filed which, as to some of the property sought to be reached, was a judgment creditor's bill on return of execution *nulla bona,* and, as to other property, it was in aid of execution levied upon land.

So far as it was a bill in aid of execution, the court denied relief, upon the merits. The bill was dismissed upon the other branch of the case, upon the ground that—

"When a man dies, all of his property not held by some definite lien is required by law to be applied ratably in payment of all his debts.  *  *  *  The statute does not, and the rules do not, declare any lien to be created by merely filing a creditor's bill. Until the debtor is enjoined from dealing with his property, there is nothing in the law to prevent any honest disposal of it; and, until a receiver is appointed, there is nothing which will act on the property itself. Except for the statute, a judgment creditor's bill is like any other suit,—a mere personal litigation. Until the assets are arrested and held in some way, the death of the defendant leaves them subject to administration. This doctrine was recognized from the beginning. In *Jones* v. *Smith,* Walk. Ch. 115, it was held that the death of the judgment debtor put an end to a creditor's bill, where no lien had attached. That must necessarily be so, because all unsecured creditors must stand on the same footing with each other. The authority of that case has never been doubted, and we think it is right."

In *Frost* v. *Atwood,* 73 Mich. 73 (16 Am. St. Rep. 560), it was said that "no rule is better settled than that liens can only be created by agreement, or by some fixed rule of law." See authorities there cited.

Counsel for the complainant contend—*First,* that the present case is distinguishable from the cases cited; and, *second,* that, if thought otherwise, these cases should be overruled, because not in line with the general current of authority. They insist that the bill now before us is a bill in aid of execution, while counsel for the defendant insist that it is not. We think this question is of little importance, because, call it what we may, it is obvious that the proceeding was ineffective to create a lien or create a preference, within the rule laid down in the cases mentioned, no levy having been made, and the proceedings in the case having in no way placed the property in the custody of the court. If we are to construe those cases as

authority for the broad doctrine that all proceedings upon a creditor's bill abate upon the death of the debtor, except when execution has been levied, or the property taken in charge by the court, they are conclusive in this case, and only by overruling those cases can the bill be sustained.

The statute (2 How. Stat. § 5884) authorizes and makes it the duty of administrators, when there is a deficiency of assets in the estate, to take steps to secure so much as shall be necessary to pay the debts of the estate, from any property which the deceased shall have conveyed in fraud of creditors. This statute has been before us in several cases, and it has been held that an administrator has no authority to act in such a case until a deficiency shall be shown, through the allowance of claims, which thereby become a charge upon the estate. *O'Connor* v. *Boylan,* 49 Mich. 213; *Kellogg* v. *Beeson,* 58 Mich. 340. And in a later case it is implied that the statute should be strictly construed, and that it does not apply to a case like the present, where the decedent never had title, but caused land for which he paid the purchase price to be conveyed to a third person in fraud of creditors. The question was expressly reserved, however, and perhaps we should not treat it as a *dictum* even. *White* v. *Newhall,* 68 Mich. 646. The court said:

"In this case there was no conveyance by the deceased, but the deed of the land sought to be subjected to the payment of his debts by this process was executed by a stranger to the defendant, and that, too, at a time when the deceased had no creditors who could complain of such a deed, even if the purchase money was furnished by the deceased, and not by the defendant. It certainly does not come within the strict letter of the statute. But it is not necessary in this case to pass upon this question."

The case was disposed of upon the merits.

This statute was not in force when the case of *Jones* v. *Smith, supra,* was decided, and it was not alluded to in the later case of *German-American Seminary* v. *Saenger, supra;* and we are not cited to any statute which authorized an executor or administrator to pursue property held

by strangers in fraud of the creditors of his intestate.   We may therefore infer that the decisions in these cases were not based upon a statute, but upon the general rule that an administrator may pursue equitable assets, as well as legal, and that he may resort to a court of equity for the purpose.   Such is manifestly the rule where there are outstanding equities that the deceased himself might have enforced.   In those cases they may be enforced by the administrator for the benefit of distributees or creditors; and while there are no equities in the intestate or his personal representatives against one holding land in fraud of creditors, there are such in favor of creditors, and it is not certain that they could not be enforced by the administrator, in the absence of a statute authorizing it.   If they could be, the statute referred to is declaratory of the common law, though, possibly, it may be said that it was intended to impose a duty upon the administrator, or to emphasize one already existing.   The authorities indicate that proceedings to recover property held in fraud of creditors might be prosecuted by the administrator at the common law.

The right of an executor to administer equitable assets is shown in 3 Williams, Ex'rs, 1545; and while a distinction may be drawn between equities which inure to the benefit of the estate, and the equities of creditors in lands held in fraud of creditors, the authority last cited indicates that property assigned in fraud of creditors is an asset in the hands of the executor.   Id.   Schouler, Ex'rs, § 220, states the rule thus:

"Any gift, assignment, conveyance, or transfer of property within the statute 13 Eliz. chap. 5, *and analogous legislation, is void against creditors, and consequently it becomes the duty of a personal representative to procure the property by instituting, on their behalf, appropriate proceedings,* considering the means of litigation at his disposal and the proof obtainable. * * * Generally speaking, property which has been assigned or conveyed by the deceased, after the manner

of a gift, confers a title upon the donee or grantee, subject to the demands of prior existing creditors of the estate. The executor or administrator, representing these and other interests, against the express or implied wishes of the deceased himself, if need be, may procure all assets suitable for discharging demands of this character. * * * The personal representative's right and duty to have a fraudulent transfer set aside may extend to proceedings by bill in equity to reach real estate thus fraudulently conveyed, so far, at least, as the interests of creditors may require real property to be reached for the satisfaction of .debts," etc.

A reference to this subject will also be found in 7 Am. & Eng. Enc. Law, 281.

The same authors indicate plainly that equitable assets in the hands of an administrator should be fairly and evenly distributed among creditors; and in 3 Williams on Executors, at page 1546, it is intimated that, upon a bill filed by a creditor of a deceased person, justice should be done to all creditors, without any distinction or priority. Schouler, Ex'rs, § 221. See, also, Id. § 220.

Whether an administrator may proceed in equity to set aside fraudulent conveyances, or to enforce resulting trusts, has been a disputed question. An extended discussion of the subject will be found in the notes to *Sexton* v. *Wheaton*, 1 Am. Lead. Cas. 43, 46, *et seq.* *Welsh* v. *Welsh*, 105 Mass. 229; *Blake* v. *Blake*, 53 Miss. 193, and cases cited. Many of the cases dealing with questions of this kind arise upon statutes, and therefore do not afford much light on the common-law rule.

The question seems to be settled for Michigan in the two cases cited. They, inferentially at least, hold that equitable assets, including land fraudulently conveyed, or held in trust for creditors, may be recovered by the administrator, and are assets in his hands, and that the equitable rule of even and impartial distribution should be followed. The statute does not militate against this rule, unless we are to say it should be strictly construed, and therefore limits it. This statute is not in derogation of

the common law; it rather emphasizes its principles; and therefore there is no occasion to apply the rule that "statutes in derogation of the common law should be strictly construed," but there is every reason to construe it liberally. We are therefore of the opinion that the administrator may file a bill to reach property under circumstances such as exist in this case. This being so, it only remains to determine whether the Michican cases should be overruled.

The case of *German-American Seminary* v. *Saenger, supra*, is probably at variance with the weight of authority, for it is commonly held that the filing of a bill creates a lien as against other creditors, upon the property described in the bill, as will be seen by a perusal of the many cases cited in the brief of counsel for the complainant. We quote from a few of them. In *Stix* v. *Chaytor*, 55 Ark. 122, it was said: "The filing of this complaint, and service of the summons issued upon it, created a lien in favor of the plaintiffs on so much of the merchandise * * * as was then in existence." In *Davidson* v. *Burke*, 143 Ill. 148 (36 Am. St. Rep. 367), it is said: "The filing of a creditor's bill, and the service of process, create a lien in equity upon the effects of the judgment debtor." See, also, *First National Bank* v. *Gage*, 93 Ill. 172; *King* v. *Goodwin*, 130 Ill. 108 (17 Am. St. Rep. 277), and cases cited. In *Newdigate* v. *Jacobs*, 9 Dana, 17, it was held that "the filing of the bill, or at least the service of the process upon it, gives the complainant a lien on the property, by placing it under control of the court." The same rule obtains in New York. *M'Dermutt* v. *Strong*, 4 Johns. Ch. 687. In *Beck* v. *Burdett*, 1 Paige, 309 (19 Am. Dec. 436), it is said:

"In all these cases, where the property is not liable to an execution at law, the plaintiff obtains no lien upon the property or fund by the issuing or return of the execution. But it is the filing of the bill in equity, after the return of the execution at law, which gives to the plaintiff a specific lien."

See, also, *Brown* v. *Nichols*, 42 N. Y. 26.

In *Bridgman* v. *McKissick*, 15 Iowa, 260, it was held that "a junior judgment creditor, by first instituting equitable proceedings to subject the property to the payment of his debt, acquires a priority of lien over a senior judgment creditor who is less diligent." See, also, *City of Cincinnati* v. *Hafer*, 49 Ohio St. 60. In *Freedman's, etc., Trust Co.* v. *Earle*, 110 U. S. 710, the Supreme Court of the United States enunciates the same doctrine.

This doctrine is clearly at variance with the Michigan cases cited, as the underlying principle upon which those cases rest is that no lien arises upon the filing of the bill until the court takes possession or control of the property by virtue of its appointment of a receiver or the issuance of an injunction, and until one of these things happens, or a lien is created through a levy or in some other way, the owner is at liberty to sell the property. If this principle stands, it must be fatal to a bill filed under any circumstances, when the relief sought depends upon the existence of a lien. In the case of *German-American Seminary* v. *Saenger, supra,* the suit abated, because it appeared that the property involved was by law made subject to administration. By the death of the original defendant, the administrator became vested with authority to acquire the property upon certain contingencies, to the exclusion of the creditor, to the end that it might be equitably distributed. It is difficult to avoid the conclusion that the two cases cited proceed upon the theory that it is the policy of the law of this State to require all of the unsecured creditors of a decedent to submit to an equal distribution of his estate, equitable as well as legal,—a conclusion that the statute (2 How. Stat. § 5902) which prohibits levies of execution until after the expiration of the period allowed for the payment of debts against the estate tends to support. If this theory should be applied in a case where a debtor has deeded his property in fraud of creditors, there is little justice in refusing to apply it in

a case where he paid the consideration for property, and had the title made to his wife or friend. No equitable reason occurs to us why the former should be administered and distributed equally that does not apply with equal force to the latter, and we are therefore not satisfied that the Michigan cases should be overruled. Their doctrine has been the settled rule in Michigan for over 50 years, and we think there is no such emergency as to require its abrogation. Under the Michigan cases, the death of a debtor seems to extinguish, or at least suspend, the right of the creditor to prosecute a pending creditor's bill, when no lien exists.

The decree of the circuit court is affirmed, with costs.

The other Justices concurred.