MERRIMAN *v.* VANDEMARK.

FRAUDULENT CONVEYANCES — CANCELLATION OF INSTRUMENTS —
DEEDS—CONTRACTS—ESTATES OF DECEDENTS.

In a suit to cancel a deed made by an intestate, who had ar-
ranged with his housekeeper to reward her care and serv-
ices by devising to her his real estate, consisting of village
property worth $2,000 or upwards, but who conveyed the
realty to defendant before his death, conflicting testimony
reviewed, and *held*, to warrant the decree of the lower
court for the complainant administrator; also that notice
to defendant of the rights and claim of the claimant (who
had secured the allowance of her claim before the probate
judge) was established by proof of defendant's admissions.

Appeal from Eaton; Smith, J. Submitted October
11, 1915. (Docket No. 34.) Decided December 21,
1915.

Bill by David P. Merriman, administrator of the es-
tate of Lewis Brooks, deceased, against Stewart O.
Vandemark to set aside a conveyance, executed in the
lifetime of decedent, for the benefit of a judgment
creditor of the estate. From a decree for complainant,
defendant appeals. Affirmed.

*Hatch, McAllister & Raymond,* for complainant.

*W. W. Wicker* (*R. R. McPeek,* of counsel), for de-
fendant.

MOORE, J. This bill of complaint was filed for the
purpose of setting aside a certain deed given by Lewis
Brooks to defendant, his nephew, May 16, 1906. The
deed was placed on record on June 5, 1906. The bill
avers, in substance, that on June 2, 1906, Lewis Brooks

died intestate, and that complainant was appointed administrator; that the sole assets of said estate consisted of the real estate in the village of Vermontville, which is the subject of controversy in this case; that at a hearing on claims the probate court allowed Helen Hammond for services rendered as housekeeper, and services rendered in caring for Lewis Brooks and his wife from 1890 until his death, the sum of $2,000; that no claims have ever been paid; that there are no personal assets in the hands of the administrator; that on May 16, 1906, Lewis Brooks executed a warranty deed to the defendant of the land in question; that said deed was not placed on record until after the death of Lewis Brooks; that said conveyance was fraudulent and void as to the creditors of Lewis Brooks; that the claim of Helen Hammond was based on a contract with Mr. Brooks whereby he agreed to will said real estate to her as compensation for her services as housekeeper and services rendered in caring for Lewis Brooks and his wife from 1890 until his death, and that the said claim accrued long prior to the making or delivery of the deed aforesaid; that there is a deficiency of assets in said estate; and that the administrator has no way of paying the claim allowed, unless the real estate described in the bill of complaint is subjected to the payment of said claim. The bill of complaint prays that the said defendant pay a sum sufficient to pay the claim aforesaid and the expenses of administering the estate, and in event of the failure of defendant to pay the debts of said estate that the deed be set aside and the premises sold to pay debts.

The substance of the answer is that the allowance of the claim of Helen Hammond against the estate of Lewis Brooks was fraudulent; that Lewis Brooks was not the owner of the lands at the time of his death; admits the giving and recording of the deed as alleged; denies that the deed was not based upon actual con-

sideration, and alleges the deed was given for a full consideration; denies any contract between Lewis Brooks and Helen Hammond as alleged; denies the deficiency of assets in the estate and alleges that Lewis Brooks at the time of his death owned a large amount of personal property which came into the possession of Helen Hammond sufficient to pay all his debts; alleges that the proceedings in probate court in Gratiot county were taken through conspiracy between complainant and Helen Hammond to establish a false claim against the estate of Lewis Brooks, and that for eight years prior to 1906 Lewis Brooks did not reside in Vermontville, and had not been cared for and no services of any kind had been rendered him by Helen Hammond; that, on the contrary, prior to 1898 Lewis Brooks had supported Helen Hammond; that in 1898 Mr. Brooks left Vermontville, and continued to reside in Detroit until 1904; that when he left Vermontville in 1898 Helen Hammond remained on the premises, and had the enjoyment of the same and the household furniture and appliances up to the time of the commencement of this suit, without paying of rent; and that she continues to reside on the premises without payment of any consideration, excepting insurance premiums and taxes. The answer further alleges that, if any services were rendered, any claim therefor is barred by the statute of limitations.

Proofs were taken in open court, and a decree in favor of complainant was rendered. From this decree, the case is brought here by appeal.

The trial judge filed an elaborate opinion from which we quote:

"The claim that the property conveyed to defendant was a homestead is without merit. If there is anything in the position that one may convey a homestead, with death near at hand, in violation of a promise before made to another to convey or devise the same, it

cannot apply to this case, for the reason that defendant had not occupied the premises for more than two years, and, if the claim of defendant is sustained, it was for more than eight years.

"Taking up the case as it appears to the court from the proof, it is my judgment that the complainant has established by a fair preponderance of the evidence the following:

"*First.* In February, 1890, the family of Lewis Brooks lived on the premises in contention, and consisted of the following named persons: Lewis Brooks, aged 78, quite infirm, nearly blind, and very deaf; Mrs. Brooks, his wife, aged 80, very helpless from old age and bodily infirmities; Mr. Brown, the brother of Mrs. Brooks, aged 85, in good health for a man of his age but very deaf. Mr. Brooks was desirous to get some one to care for them. Helen Hammond was a niece of Mrs. Brooks. She lived in Vermontville with her husband and family on a small place. She was about 50 years old, in good health, a good housekeeper, and at times did service as a practical nurse. Mr. Hammond was a laborer working his own premises and other lands. The Hammonds left their home and moved on to these premises. At that time Mr. Brooks had the property in question, consisting of the home and about seven acres of land, and a mortgage taken on a farm in Jackson county, which he had sold, and which mortgage was for $3,300, bearing interest at 6 per cent. The arrangement first made was that Mrs. Hammond was to live on the premises, and was to be paid $4 a week for her care of the family. Mr. Hammond was to work the land on shares, having two-thirds, and giving Mr. Brooks one-third. A few months later Mr. Brooks, not making collection of interest when due on his mortgage, made another arrangement by which Mrs. Hammond was to stay there and care for them as long as they lived, and was then to have the place either by a deed of conveyance or by will.

"*Second.* Mr. Brooks lived there continuously until 1898, but after that and until 1904 he stayed part of the time during the winter season with the defendant, Mr. Vandemark, in the city of Detroit. Mr. Vandemark's mother and Mr. Brooks were brother and sister.

"*Fourth.* That defendant claims that Mr. Brooks did not live in the Vermontville home after 1898, but

occasionally visited there. The complainant's claim is that Mr. Brooks lived at his home in Vermontville until 1904, making visits in the winter at the home of Mr. Vandemark in Detroit. I am satisfied that the complainant's claim has been established by the greater weight of the evidence, and that this home was his home a greater part of the time until the year 1904.

"*Fifth.* In the year 1904, without any fault of Mrs. Hammond, he moved to Alma, in Gratiot county, this State, into a home with his sister, Mrs. Vandemark, and his niece, Mrs. St. John, who is a sister of the defendant.

"*Sixth.* In the year 1899 Lewis Brooks made his will, and this will was in conformity with his agreement with Mrs. Hammond. This will remained in the custody of Mr. Benedict, who drafted it, until the year 1904, when Mr. Brooks, just before removing to Alma, called and got it, and took it away with him.

"*Seventh.* The fact that Mr. Brooks made the contract in question with Mrs. Hammond is beyond doubt. It is established by proof that cannot be doubted. * * *

"*Eighth.* It is beyond question that Mrs. Hammond carried out her agreement to the letter; that she cared for these old people in the best possible way, and well earned all she could get under said contract. * * *

"*Tenth.* May 16, 1906, the deed in question was made by Lewis Brooks to the defendant at Alma, Mich. Mr. Brooks at this time was of the age of 94 years.

"*Eleventh.* Mr. Brooks died at Alma June 2, 1906, and his body was brought to the old home in Vermontville for burial, accompanied by the defendant.

"*Twelfth.* The deed was placed on record June 5, 1906, the day of Mr. Brooks' funeral.

"*Thirteenth.* December 6, 1911, complainant was appointed administrator of the estate of Lewis Brooks by the probate court of Gratiot county, in this State, filed his bond, and received his letters of administration.

"*Fourteenth.* After that Helen Hammond filed her claim against said estate, which claim as filed was as follows: * * *

"*Fifteenth.* On December 2, 1912, the claim was heard by the judge of probate of said Gratiot county

and allowed at the sum of $2,000. The finding of the court is as follows:

" 'The evidence before the court shows that the above services were rendered to and in behalf of said deceased during his lifetime, under a contract or understanding that the said deceased should will certain property in the village of Vermontville, Eaton county, Mich., and occupied as a home by the said deceased during the years in which the said services were rendered, except the last two years or more just prior to his death, and that no provisions were made for the said claimant in settlement for her services. The evidence also shows that the value of the services were much in excess of the property in question which the evidence showed to be worth $2,000, which sum the court has allowed said claimant, and that the said deceased died possessed of no other property only that in question and above referred to.' * * *

"*Seventeenth.* Mrs. Hammond has been in possession of said property since 1890, and is now in possession of it, and has during that time cared for it, paid the taxes on it, and kept it in repair.

"*Eighteenth.* The defendant made no claim to the premises until June, 1913, when he caused to be served on Mrs. Hammond a notice to quit possession of the premises.

"While I am without doubt as to the proper disposition of this case from the proof, yet I am of the opinion that, could the truth be known as to the disappearance of the will, and the disposition of the money belonging to Mr. Brooks, on account of the mortgage, it would materially strengthen the claim of the complainant in this case, as set forth in the bill of complaint. It is my judgment that complainant has established a legal fraud against the defendant in the giving and taking of this deed, and has established his right to the relief he asks for, and that he should be given a decree as prayed."

The bill of complaint in this cause is filed under 4 How. Stat. (2d Ed.) § 11074 (3 Comp. Laws, § 9363). This statute has been construed by this court in a number of cases. See *Walker* v. *Cady*, 106 Mich. 21 (63 N. W. 1005); *Beith* v. *Porter*, 119 Mich. 365 (78 N. W. 336, 75 Am. St. Rep. 402).

The important questions in the case are questions of fact. Dr. Snell testified to a conversation with defendant that shows the defendant knew about the arrangement between Mrs. Hammond and Mr. Brooks long before he took the deed, and, though defendant was a witness, he did not deny this conversation.

There was contradictory testimony. It would profit no one to quote the testimony. We shall content ourselves with saying that, after a careful examination of the record, we are satisfied with the decree of the court below.

The decree is affirmed, with costs.

BROOKE, C. J., and PERSON, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.