CHAPOTON v. PRENTIS. [1]

1. FRAUDULENT CONVEYANCES — CONSIDERATION—EVIDENCE—SUF-
FICIENCY.
On a bill by an executor to set aside the deed of a trustee to a
creditor of the testator made in obedience to an order signed
while testator was in extremis, evidence examined, and *held*,
to warrant a finding that the indebtedness which the trust
was executed to secure had been paid, and that the deed by
the trustee was therefore without consideration and a fraud
on testator's creditors.

2. WITNESSES—COMPETENCY—TRANSACTIONS WITH PERSONS SINCE
DECEASED.
On a bill by an executor to set aside a deed made by testator's
trustee to a creditor as in fraud of other creditors of the testa-
tor, the claim being that the debt owing to the grantee had
been paid, an attorney who acted as the testator's confiden-
tial adviser in the matter, and also represented the grantee, is
incompetent to testify as to the transaction.

3. EXECUTORS AND ADMINISTRATORS — DEFICIENCY OF ASSETS —
FRAUDULENT CONVEYANCE—SETTING ASIDE—STATUTES.
Where there is a deficiency of assets in the hands of an execu-
tor, through the allowance of claims which become a charge
on the estate, the executor is empowered to institute pro-
ceedings under sections 9363 et seq., 3 Comp. Laws, without
an order of the probate court or an application by creditors.

4. SAME—ALLOWANCE OF CLAIMS.
On a bill by an executor to set aside a conveyance by his testa-
tor as in fraud of creditors, the allowance by the commis-
sioners of claims which do not show on their face that they
accrued after testator's death constitutes prima facie evidence
of their existence before that period.

5. SAME—CONCLUSIVENESS.
The allowance of claims against an estate by commissioners
having jurisdiction, is, in the absence of fraud, conclusive
against the estate and all persons having an opportunity to
be heard.

6. SAME—ACTIONS—PLEADING—DEFENSES.
Where, on a bill by an executor to set aside an alleged fraudu-

---

[1] Rehearing denied November 7, 1906.

lent conveyance of testator's property, on the ground that there was a deficiency of assets, defendant's answer admits that the commissioners on claims gave notice of their meetings "according to the statute in such case made and provided," defendants are not entitled to avail themselves of the fact that notice of such meetings was not given to the executor.

7. SAME—PARTIES.

One who has parted with his interest in property alleged by an executor to have been conveyed in fraud of creditors, of the estate is not a necessary or proper party to a suit by the executor to set aside such conveyance.

8. SAME—DECREE.

On a bill by an executor to set aside an alleged fraudulent conveyance of testator's property because of the deficiency of assets to pay claims allowed against the estate, as authorized by section 9363, 3 Comp. Laws, a decree requiring a reconveyance of such property to the executor and a sale thereof in the ordinary manner to pay debts is too broad, and will be modified, so as to require the grantee to pay claims allowed against the estate and costs of the proceedings in the probate and circuit courts within a reasonable time from the entry of the decree, and that the lands be sold only on his failure to do so.

Appeal from Wayne; Brooke, J. Submitted March 1, 1906. (Docket No. 73.) Decided May 24, 1906.

Bill by Edmund A. Chapoton, executor of the last will and testament of Thomas L. State, deceased, against John F. Prentis and James T. Keena, trustee, to reach assets disposed of in fraud of creditors. From a decree for complainant, defendant Prentis appeals. Modified and affirmed.

*Clarence A. Lightner*, for complainant.

*James Swan*, for appellant.

BLAIR, J. Thomas L. State died at St. Mary's Hospital, in Detroit, on November 17, 1900. On November 14, 1900, State signed an order upon defendant Keena, as

trustee, to convey the real estate which is the subject of controversy in this suit to defendant John F. Prentis. In pursuance of this order, on the same day, defendant Keena executed a deed to defendant Prentis of the property.

Thomas L. State had been a resident of Detroit for many years. His wife's name was Mary Josephine State. State's wife died several years before his death. They had no children and State was her sole next of kin. At the time of her death, she was the owner, in fee, of the house and lot in question in this suit. At the time of her death, there was outstanding upon this property a mortgage for $700, given by Mrs. State to the Detroit Savings Bank, bearing date October 1, 1890. Thomas F. Sullivan was at this time discount clerk of the People's Savings Bank, of which George E. Lawson was cashier, and defendant James T. Keena, attorney.

Previous to April 19, 1893, the Detroit Savings Bank had placed this mortgage, for collection, in the hands of its attorneys, and on that day the total amount due for principal and interest (being $810) was paid to the Detroit Savings Bank by a check of the People's Savings, signed " State per Sullivan." The books of the Detroit Savings Bank show that upon receiving this amount the bank executed an assignment of the mortgage on April 19, 1893, and the note, to which it was collateral, to Thomas State. This assignment was never recorded, and apparently was never acted upon, because there appears of record an assignment from the Detroit Savings Bank to Thomas F. Sullivan, dated December 28, 1894, and the explanation of Mr. Boss, the assistant cashier of the Detroit Savings Bank, is that after the execution of the assignment to State, that assignment was returned to the Detroit Savings Bank, who, at the request of State and Sullivan, executed the assignment to Thomas F. Sullivan. Thereupon, foreclosure by advertisement of this mortgage was had, Mr. Browse T. Prentis acting as Sullivan's attorney in the matter, and upon this foreclosure a sheriff's deed was sub-

sequently, and on April 2, 1895, executed to Sullivan. Before the time of redemption had expired, and under date of October 25, 1895, Sullivan executed a trust deed of this property to defendant James T. Keena. This deed placed the legal title to the property in James T. Keena as trustee, with power to sell the property and pay two notes executed by State on the date of the trust deed, one payable to defendant John F. Prentis for $500, with interest, and the second payable to Thomas F. Sullivan for $600, with interest. Upon payment of these sums, the trust provided that the property was then to be conveyed to State. Mr. Keena testified:

" That deed was made to me by Mr. Sullivan under an understanding that I was to hold the title for Mr. State and as security for an indebtedness due from Mr. State to Mr. Sullivan."

On November 14, 1900, Mr. Prentis brought to Mr. Keena the order, which contained the signatures of Thomas L. State, Thomas F. Sullivan, and John F. Prentis, and requested Keena to convey the property to defendant Prentis. Thereupon, Mr. Keena executed the deed to defendant Prentis, now in question. State died November 17, 1900, and was on his deathbed when this order was signed by him. Browse T. Prentis testified:

" Q. You don't know whether the note is still outstanding as a claim of John Prentis, or whether it is a canceled note ? You don't know that ?

"A. As a matter of law, I should think that note was paid.

" Q. If that note was paid, why didn't you hand that note to Tom State when this transaction took place ?

"A. Mr. State was dying."

Upon the death of Thomas State, complainant was duly appointed executor by the probate court for the county of Wayne on February 11, 1901, and he duly qualified in said trust. Commissioners on claims were appointed by the probate court on July 22, 1901, and the report of the commissioners was filed on January 24, 1902,

wherein was allowed a total of $736.50, aside from the commissioners' fees, aggregating $50. The claims thus allowed were partly for funeral expenses, etc., paid out by Miss Catherine State, sister of deceased, and there was a claim of $600 allowed to Joseph E. State, a brother.

The executor did not obtain property with which to pay the expenses of administration, or the debts thus allowed, and in March, 1902, he filed the bill in this case. It is based upon the provisions of 3 Comp. Laws, § 9363 et seq., which authorize an executor or administrator to reach assets which have been disposed of by a decedent in fraud of creditors. John F. Prentis is a brother of Browse T. Prentis and of George H. Prentis, attorney in Detroit, and Mary Prentis is the wife of Browse T. Prentis. Browse T. Prentis, in his negotiations with State, represented himself, his wife, and his brother John.

Complainant concedes that defendant Keena acted in perfect good faith throughout this transaction, and it appears that Mr. Keena had no knowledge of the principal facts in question. Complainant does not contend that there was actual fraud upon the part of the other defendant, but claims that the deed sought to be set aside was purely voluntary and without consideration, and, therefore, void as to creditors. Defendant Prentis insists that the deed to him was supported by an adequate consideration, and is valid against creditors. This contention presents the principal question of fact in the case. The learned trial judge who heard the case found for the complainant upon this question, and we think his conclusion was correct. Mr. Sullivan and Mr. State both being dead, there were no witnesses who had knowledge of the facts in dispute except the Prentis family, John F., defendant herein and grantee in the deed attacked, Browse T. Prentis, his brother, and also a claimant against State's estate, and Mary, his wife. Browse T. Prentis had been the attorney and confidential adviser of State during the period of these transactions and drew the trust deed to Keena. He testified that:

"The main purpose of that deed was to secure his indebtedness to my brother and my wife, which had been contracted through me."

Complainant showed by indisputable evidence that on April 24, 1899, State received $1,500 in settlement of certain suits against insurance companies; that on the same day State purchased with this money two certificates of deposit, one for $700 payable to Sullivan and credited to his account; the other for $688, payable to the order of B. T. Prentis. This last certificate is indorsed by B. T. Prentis and the Union National Bank of Detroit. Mr. B. T. Prentis, who was the only witness sworn for defendant, admitted that he received the money from the Union National Bank. He testified with reference to the $500 loan:

"Mr. State had no negotiations with my brother in regard to that loan. I got the money from my brother and handed it over to State and took the note.

"Q. The note has never been paid?

"A. Not a cent of it."

It is clear that the certificate of deposit payable to Sullivan was in discharge of the indebtedness to him secured by the trust deed and I have no doubt that the certificate for $688 payable to the order of B. T. Prentis was in full settlement of the note of $500 to defendant John F. Prentis. Mr. B. T. Prentis was unable to give any satisfactory explanation of the making out of the certificate to him. He testified that of this insurance money:

"Tom State didn't get it. He got what I paid him from that draft, and that is all that he ever handled the money, I guess.

"Q. Of course, the discontinuance of those insurance cases was done through you?

"A. Yes; undoubtedly, it was done through me. That is my signature to that stipulation and discontinuance. I have no recollection of the thing.

"Q. Do I understand you to say that Tom State got that $688 at all?

"A. I do say that he got every dollar on that except

what I retained by an agreement with him for my services in these cases.

"*Q.* You can't say the amount?

"*A.* I don't remember.    *    *    *

"*Q.* Exhibits 1 and 2, being two certificates of deposit, seem to aggregate $1,388. Can you tell us where the balance of the amount received from the insurance companies went?

"*A.* No, I cannot.

"*Q.* $122. Did you get it?

"*A.* I can't tell you anything about it.    *    *    *    I don't remember anything about it. Excepting by seeing these two drafts I wouldn't remember anything about that transaction.

"*Q.* Do you tell us that of that $688 a part of it went to you and a part of it to State?

"*A.* That is my recollection.

"*Q.* You can't tell us how much went to you?

"*A.* No, sir, I cannot. I know I got my pay at that time for the suits, which was about half of what I ought to have had.

"*Q.* What was that amount that was your charge against State for attending to the insurance matter?

"*A.* I don't remember.

"*Q.* You didn't charge him $688 for it?

"*A.* No, sir.

"*Q.* It was more likely $100?

"*A.* More like $100. I think it was more than $100, but it was nearer $100 than $688.    *    *    *

"*Q.* Can you give any reason so far, why the certificate of deposit you have made out so carefully, B. T. Prentis on the face of it for a large amount like that, with a balance of $122 in there, if you were not to keep that fund, just as Tom Sullivan got his $700?

"*A.* I know I didn't get that money, Mr. Lightner.

"*Question by the Court:* You must have got it.

"*A.* I got it, of course, I didn't get it to keep. I turned it over to State.

"*Q.* You can't give any explanation why that was made out in that way?

"*A.* I suppose that was the balance; I don't know. I couldn't give you any explanation. I have forgotten the transaction entirely."

This transaction, on its face, indicates clearly a satisfaction of the trust deed, and in view of the confidential

relations existing between B. T. Prentis and State, his utter failure to explain the transaction, and the fact that State and Sullivan were dead, I think the transaction should be held to be a payment of the note and interest and probably Prentis' fees in the insurance cases. This conclusion is further strengthened by the fact that on June 10, 1899, State collected $1,500 of the city of Detroit of which he paid $500 to Browse T. Prentis; $500 to George H. Prentis, his attorney in such suit, and retained $500 himself. It would extend this opinion too much to discuss the other claims of defendant in support of said absolute deed to himself. The best supported of them all is that upon this $500 note, and, having determined that this was paid, I do not think it necessary to set forth in detail the reasons for holding that the deed in question was without consideration and void as to creditors. I am also of the opinion that the testimony of Browse T. Prentis was incompetent, the facts being equally within the knowledge of Thomas State, deceased, and without his testimony the weight of the evidence is clearly with complainant.

But, whether the deed was without consideration or not, defendant insists that the bill must be dismissed because:

(1) There has been no order that complainant should pay the claims as required by 3 Comp. Laws, § 9404.

(2) There is neither an allegation in the bill nor proof that the creditors applied to the executor to file this bill or made provision for the costs as required by section 9364, 3 Comp. Laws.

(3) The statute authorizing this proceeding relates to property conveyed only and the bill and proofs show that State did not nor could convey, but that he caused the land to be conveyed.

(4) Neither the bill nor the proofs show that the claims existed at the time the alleged fraudulent deed was made, nor that it was made to defraud the then existing creditors of State, nor that the claim existed when the title was in State as required by 3 Comp. Laws, §§ 9363–9365.

(5) Sullivan was a necessary party.

(6) The commissioners did not give notice of their meeting as required by statute, their report of the allowance of claims was a nullity and the claims allowed are not lawful claims against the estate. Even if regularly allowed, the claims would not be binding upon defendant who was not a party to the proceedings, but must be proved to be lawful.

(7) If complainant is entitled to recover, he is not entitled to the relief granted.

The first, second, third, and fourth points may be considered together. The bill in this case is founded upon sections 9363 et seq., 3 Comp. Laws, which clearly authorize the administrator or executor to institute such proceedings when there is a deficiency of assets in his hands, through the allowance of claims which become a charge upon the estate. *Beith* v. *Porter*, 119 Mich. 365. Paragraph 4 of the bill of complaint sufficiently alleges a deficiency of assets, the proofs satisfactorily show such deficiency, and neither an order of the probate court nor an application by creditors was required by the section of the statute above quoted. It was held in *Beith* v. *Porter*, supra, that this statute should be liberally construed to cover a case where the deceased paid the consideration for property and had title made to his wife in fraud of creditors. By parity of reasoning I think the statute covers the present case. The bill as amended averred:

"That all of the indebtedness set forth in paragraph 2 herein (except expenses of the funeral and of the last sickness of said Thomas L. State, which formed a small portion of said indebtedness) arose, accrued, and matured prior to the signing of said order, to wit: to November 14, 1900."

When the report of the commissioners on claims was offered in evidence, defendant's counsel made the following objections:

"*Mr. Swan:* To so much of that as is embodied in the report of the commissioners showing the amounts of the claims allowed I object, as not binding upon the defendant Prentis in this case, he not having been a party to it

and knowing nothing about it, no opportunity to be represented.

"*The Court:* It will go in any way.

"*Mr. Lightner:* I think this is the essential part. I will just read the report, the items of claims. The report of the commissioners is in the usual form, allowing to Miss Catherine State, account of Charles N. Flattery, funeral director, $119.15; Father F. L. Wieman, funeral mass, $12; Stanton Clark, attorney's fees, $5, being a total of $136.50. Also, Joseph E. State, amount claimed, $600, amount of final balance in favor of creditor, $600; commissioners' fees, $25 each.

"*Mr. Swan:* I have a special objection to so much of the report as shows money allowed to Catherine State, on the ground that it accrued after the death of Mr. State, and should not have been allowed by the commissioners. They are not a proper charge against his estate, so far as this bill is concerned."

These were the only objections presented, so far as the point now under consideration is concerned, and are, therefore, the only objections which we consider upon this appeal. Mr. State signed the order for the deed on November 14th, when he was dying, and he actually died on the 17th of the same month. Under such circumstances, I think the allowance of claims by the commissioners not shown upon their face to have accrued after that time is prima facie evidence at least of their existence before that period. The allowance of the claims by the commissioners on claims, who had jurisdiction to pass upon them, in the absence of fraud, was conclusive against the estate and all persons who had an opportunity to be heard. The allowance of the claims created a deficiency of assets and, thereupon, the statute authorized the executor to institute proceedings. I think it was not the intention of the statute to require the executor, in the first instance, to prove these claims in proceedings like the present other than by the report of the commissioners or the judgment of the circuit court on appeal. While the allowance by the commissioners was not conclusive upon defendant (*Seymour* v. *Wallace,* 121 Mich. 402),

the burden was upon him to show its invalidity, and having made no attempt to impeach their validity by evidence, the claims must be considered valid.

The bill of complaint avers:

"(2) That, as appears from the files and records of said probate court for Wayne county, on the 22d day of July, 1901, Amadeus T. Moran and Harry Rickel, both of Detroit, Wayne county, Michigan, were appointed commissioners on claims in the said estate of Thomas L. State, deceased, by the aforesaid probate court of Wayne county, and having duly qualified and given notice of their meetings, according to the statute in such case made and provided, did allow lawful and liquidated debts as claims against the said estate to the amount of $786.50, as appears from the report of said commissioners filed in said probate court on the 24th day of January, 1902."

Paragraph 2 of the answer is as follows:

"Upon information and belief, he admits the matters set forth in the first, second and third paragraphs of said bill, except that he says that the claims allowed by said commissioners are not just and fair, and should not have been allowed against said estate.

"The report of the commissioners on claims referred to in said bill now on file in the probate court for said county, shows that the only claimants or creditors are Joseph E. State and Catherine State, a brother and sister of said deceased, and defendant says, upon information and belief, that said deceased, at the time of his death, was not indebted to either of said persons in the amount allowed, or in any amount whatever.

"The sum of $131.50 is allowed to Catherine State for funeral expenses of said deceased, and $5 for 'attorney fees,' total $136.50, supposed to have been paid by said Catherine; and this defendant shows upon information and belief, that no part of said amount was a charge against her, said Catherine, and that if she paid the same, it was a voluntary payment, and should not have been so allowed to her. Further, that the same was not a claim against said deceased before or at the time of his death, and furnishes no ground for the action of said executor in filing this bill.

"This defendant is further informed, and believes that this complainant, as executor as aforesaid, did not con-

test the allowance of said claims, and made no investigation or examination of the same, but suffered them to be allowed by the commissioners, if he did not consent to or procure their allowance, and he believes that said claims ought not to have been allowed, and would not have been if the said executor had properly contested them in the probate court."

The answer having admitted that the commissioners gave notice of their meetings, "according to the statute in such case made and provided," it was unnecessary to prove such fact. It is true that it appeared by the testimony of the executor that he had never been served with notice of the meetings, but, as the order of the probate court is not set forth in the record, we cannot say that it contained any such requirement, and the defense is not available under the answer. *Reed* v. *Jourdan*, 109 Mich. 128. Mr. Sullivan, having been paid in full and having parted with his interest, was not a necessary or proper party.

The decree provides that the deed—

"Be and the same is hereby set aside and vacated and declared null and void and of no effect whatever, as against the complainant.

"2. That the defendant, John F. Prentis, deliver up the said deed to the register of this court, to be canceled; and that the defendant, John F. Prentis, execute and deliver to the complainant herein, as executor of the estate of Thomas L. State, deceased, a good and sufficient deed of the said above described real estate, within twenty (20) days from the date hereof, and that in default of such conveyance, a certified copy of this decree may be recorded with the register of deeds for the county of Wayne, and shall stand for and have the same effect as if such conveyance were made.

"3. That the defendant, James T. Keena, trustee, execute and deliver to the complainant, as executor of the last will and testament of Thomas L. State, deceased, a good and sufficient deed of the premises hereinbefore described, and that upon recording said deed, or a certified copy of this decree, the title to said premises is hereby decreed to be vested in said complainant as executor, as aforesaid.

"4. That the complainant, as executor, as aforesaid, shall proceed to reduce said land to money by the sale thereof, in the same manner as if the deceased had died seised thereof, upon obtaining a license therefor from the probate court, in accordance with the statute in such case made and provided; and that the complainant, as executor, as aforesaid, account to the probate court for the receipts from such sale."

This decree was too broad, and will be modified, so as to provide for payment by defendant Prentis of the claims allowed and the costs of the proceedings in the probate and circuit courts within 90 days from the entry of decree herein. See *Reed v. Jourdan,* supra. Upon failure to so pay such claims and costs, the land in question may be sold, as provided by the statute. Neither party will recover costs in this court.

CARPENTER, C. J., and MCALVAY, OSTRANDER, and MOORE, JJ., concurred.