BROWN *v.* KEISER.

1. HOMESTEAD—EXEMPTIONS—DEATH—CREDITORS.

   The homestead of an unmarried man ceases to be exempt at his death: the statute creates such exemption only in favor of the widow or minor children of a decedent.

2. ESCROWS—CONVEYANCES—DELIVERY.

   Evidence that decedent delivered a deed of his homestead to a third party to be delivered to the son of grantor; that no such instructions were given as to the length of time the deed was to be held; that although the witness understood the conveyance was to be delivered at the death of the father, and such intent was clearly to be inferred, no such instructions were specifically given; that the conveyance was made to induce the son to advance about $120 to the father; and that the money was advanced, *held*, to be insufficient to satisfy the requirement of law that proof of the oral directions must be clear and convincing.

3. SAME—DEEDS—DEATH—FRAUDULENT CONVEYANCES.

   By delivery of a deed in escrow to be surrendered to the grantee only after the decease of the grantor, a conveyance of the fee is accomplished, operating as of the date of delivery, the enjoyment being postponed until the grantor's death. But, in equity, such a legal fiction cannot be permitted to defeat just claims of creditors which arose before the second delivery of the escrow. BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurring on the ground that no delivery was proved and dissenting from the reasoning that if a delivery in escrow was effected, the conveyance should be set aside in favor of creditors.

4. SAME—DEBTOR AND CREDITOR—EQUITY.

   But the decree, in a suit to set aside the deed as fraudulent, should have been so drawn as to permit the grantees in the deed to pay the claims against decedent, and costs, within a limited period, and not setting aside the transfer absolutely.

Appeal from Lapeer; Smith, J. Submitted January 21, 1914. (Docket No. 36.) Decided October 2, 1914.

Bill by Samuel D. Brown as administrator of the estate of William Keiser, deceased, against William F. Keiser and Jane S. Keiser to set aside a deed as a fraudulent conveyance. From a decree for complainant, defendants appeal. Modified and affirmed.

*William E. Brown,* for complainant.

*B. F. Reed (George B. Andrews,* of counsel), for defendants.

STEERE, J.  In this suit defendants have appealed from a decree of the Lapeer county circuit court in chancery, setting aside a deed to them of certain premises, executed by complainant's decedent, and not recorded until some time subsequent to his demise, in order that the realty described in said conveyance may be reached by complainant, as administrator, and devoted, so far as necessary, to paying debts of deceased's estate.

The premises in question, described as N. ½ of lots 9 and 10, block 22, in the N. E. division of the city of Lapeer, Mich., and conceded to be of the value of $1,000, were purchased by William Keiser, decedent, in 1901. He was then a widower, and so remained until his death, which occurred September 29, 1908. Shortly after purchasing said property, he took possession thereof and resided upon it during the remainder of his life. When he died, and for some time prior thereto, his son and son's wife, William F. and Jane S. Keiser, defendants, resided with him. From the time of purchase, in 1901, until March, 1910, said premises stood upon the public records in the name of deceased. In February, 1910, no steps having been taken by relatives to liquidate the expenses of deceased's funeral and a few small debts which he had left, his creditors instituted proceedings in the probate court of Lapeer county for the settlement of his estate.

Complainant was appointed administrator. Debts amounting to $210.49, including said funeral expenses, were proven and allowed against the estate. On March 7, 1910, the son, William F. Keiser, caused to be recorded a deed of the premises from deceased to himself and wife, bearing date April 8, 1908; the stated consideration being $1.

Unable to find other assets belonging to the estate, complainant filed this bill to set aside said deed, alleging that the same was never delivered during the grantor's lifetime, and that he died seised of the premises described therein; that complainant and others had extended credit on the understanding and belief that the ownership of said real estate was as shown by the records; that no other assets of said estate were discoverable; that defendants refused to pay the debts of said estate, claiming to own said premises clear and free therefrom, and therefore complainant prayed that said deed be held void as against creditors and, if necessary, that said premises be ordered sold to satisfy their claims.

It appears, undisputed, that the deed in question was executed by deceased at his home on the date it bears and was, on the same day, left with the First National Bank of Lapeer, inclosed in an envelope, on which was indorsed a memorandum briefly describing the deed and stating that it was "to be delivered to grantees at the death of William Keiser, grantor."

The instrument was prepared by an old friend of deceased's, named J. H. Bidwell, who took the acknowledgment and acted as a witness. He made the indorsement on the envelope and delivered the deed, so inclosed and marked, at the bank, being accompanied there by defendant William F. Keiser. It there remained in custody of the bank until March 7, 1910, when said defendant procured and had it recorded following the institution of probate proceedings by

creditors of his father's estate. The circumstances of its execution indicate clearly the intent of deceased that the deed should not be delivered to the grantees during his lifetime. They were both present when it was executed, and he delivered it to Bidwell, not to them. What his further intentions in regard to it were is not so clear. There is no direct proof of any statement by him indicating that he did or did not intend to retain full control of it.

Of the witnesses present, only William F. Keiser and Bidwell testified to the transaction. Keiser related no conversation with his father or circumstances leading up to the execution of the deed, and briefly told of the occurrence as follows:

"Mr. Bidwell drew that deed, and I read it and handed it to my wife, and she read it and handed my father the deed, and father handed it to Jim (Bidwell) and said it was all right, and Jim put it in an envelope and wrote that stuff on there. I didn't know what was on it."

He also stated that he volunteered to go with Bidwell to the bank, "and the deed was left there."

Bidwell's account of the transaction was somewhat more full, he being recalled by the court, on its own motion, for further details, but his evidence was yet quite general and indefinite in many respects. He did not tell by whom he was instructed to prepare the deed, nor give the particulars of any conversation. He testified that he and deceased had been friends for years, and deceased used to go to him about many matters; that the deed was drawn up in his office, and he afterwards went with it to deceased's residence, where it was executed, he taking the acknowledgment and signing as a witness, but remained there but a short time; that he understood the son was letting his father have $100, $115, or $120 to pay a note the father owed; that later he learned the money had been paid to a creditor of deceased; that he could not say

whether the deed was given for security or not, but he got the impression that, unless the deed was made, the money would not be forthcoming; that his understanding of the arrangement was the deed should be then taken to the bank, for the purpose of not having a delivery to William F. Keiser, and not to be delivered to the grantees until after the father's death, it being talked that it should be left in care of witness, who, however, suggested that, instead of his keeping said deed, it would be safer if left with the bank, which was acquiesced in; that, having received the instrument from the grantor after its execution, he first took it to his office and inclosed it in an envelope, upon which he wrote the memorandum before mentioned, then turned it over to the bank, without giving any special instructions, as he remembered, thinking the indorsement on the envelope would be sufficient; that no other consideration for the deed was mentioned in his presence nor anything said about the grantor keeping control of the instrument.

We need spend little time upon defendants' contention that the property was exempt from claims of deceased's creditors because it was his homestead. It ceased to be such when he went to his long home. He left no wife nor minor children to whom the privilege might be transmitted under the statute. The statute—

"Exempts the land only while it is occupied as a homestead by the widow and minor children. Subject to the homestead right, therefore, the lands are assets, when needed for the payment of demands against the estate." *Drake* v. *Kinsell*, 38 Mich. 232.

If the property belonged to deceased at the time of his death, it became an asset of his estate, holden for its debts as any other property might be.

It is the contention of defendants that the facts proven in this case show deceased delivered this deed to a third party as an escrow, reserving no control of

it, and with only the condition that it should be delivered to the grantees on his death, an event certain to happen sooner or later; that grantees having knowledge of and consenting to it, the delivery to the third party operated at once as a present, complete conveyance of the fee, free from all obligations of the grantor or his estate.

It is insisted by complainant that there was no legal delivery of this deed to or for defendants during deceased's lifetime; that it is not shown to have been delivered by deceased to Bidwell beyond recall, and that the strongest inference in defendant's favor to be drawn from the testimony is that, to recall it, the grantor would be required to repay the money it is claimed his son let him have on the strength of it; that even though it should be found the deed was delivered by the grantor as an escrow, beyond recall, to convey the fee and become operative on delivery to grantees at his death, whereby, as between the parties, the title might pass by relation at the time of the first delivery, it would not be effectual to cut off intervening rights of creditors of the estate.

Upon the question of delivery, we start with the general proposition that a deed is inoperative until delivered by the grantor and accepted by the grantee. It may be delivered to a third person for the benefit of the grantee, and when afterwards delivered to and accepted by the grantee it will, by the doctrine of relation, take effect from the date of the original delivery. Under these elementary rules, there are different classes of delivery through an intermediary, of varying legal significance, according to conditions imposed and the intent of the grantor as declared, or disclosed from the facts and circumstances shown.

The chief cause of uncertainty and resulting abundance of litigation on this subject arises from the accepted rule that in this class of cases the title may

rest for certain of its essentials on parol evidence. It is not required, as once indicated by early authorities, that all escrows, or conditional deliveries to third parties for ultimate delivery to grantees, must be evidenced by written instructions from the grantors (*Fulton* v. *Priddy*, 123 Mich. 298 [82 N. W. 65, 81 Am. St. Rep. 201]), and in this case defendants' title depends for one of its essentials on parol evidence, in many respects rather indefinite and inferential. We have no distinct statement by any one as to what the actual understanding and agreement between the parties was. The one of the grantees who testified told nothing of how this deed came to be made, briefly gave his version of what occurred at the time it was executed, and asserted the deed was his, and he paid for it. The grantor's mouth is closed by death.

The conveyancer did not know of any conversation between father and son previous to the time of the execution of the deed, stated he was not long there that morning, was not able to tell definitely what was said by any particular person or of distinct instructions given in relation to the deed which he carried away, but in general terms stated what he understood or inferred from what was talked, as he recollected it. From his testimony we can gather that the occasion for executing the deed was that the son let his father have some money with which to pay a debt; that in the transaction neither party was disposed to trust the other fully. The father would not trust the son with the deed, and, "unless the deed was made, the money wouldn't be forthcoming." Witness did not "recall that there was any conversation in regard to repayment of the loan," and he did not remember anything said as to whether or not the father might recall the deed, but understood the deed was to be delivered to the son at the death of the father, who desired witness to care for it, but consented, on witness' suggestion, that he might leave it with the bank.

Witness thereafter, without any more definite instructions from deceased, wrote the indorsement on the envelope and left the instrument with the bank as before stated, and, so far as shown, without telling deceased of the indorsement or obtaining any ratification of what had been done. Bidwell nowhere testified that the grantor delivered the deed to him, or any other third party, with instructions to deliver it to grantees at grantor's death. The farthest he went in disclosing the expressed intent or desire of the grantor was the statement that deceased suggested it be left with witness, and when directly asked by the court if deceased said anything as to how long witness should keep it, or when deliver it to the son, he replied:

"I don't remember now what he said in that matter. * * * I can't recall the conversation."

The son, the only other witness, goes no farther than to state that his father said the deed was all right, and "handed it to Jim." Bidwell nowhere directly traces to the father the source of his understanding that the deed should be delivered to the son upon the death of the father.

Not only must the delivery, by grantor to a third party be proven, but also the definite instructions by him to deliver after death to the grantees. The validity of title to real estate, which defendants seek to maintain to defeat creditors of this estate, depends upon oral proof to sustain this proposition. It should be unequivocal, clear, and convincing proof. We are not well satisfied that the trial court should have found that it was.

Conceding, as defendants so strenuously insist, that it is affirmatively established by the proofs that grantor did deliver this deed to a third party, with instructions to deliver it to grantees on his death, and with the intent that it should thereafter be beyond his control or power to recall, we need spend no time

with the numerous authorities cited upon the question of whether title passed before the second delivery and its effect as a deed between the parties at the date of the execution. That question is at rest in this court. The most emphatic utterance, perhaps, being found in *Meech* v. *Wilder,* 130 Mich. 29 (89 N. W. 556), wherein it is said:

"It is the well-established rule in this State that the delivery of a deed by a grantor to a third party, to be by him delivered to the grantee after the grantor's death, is valid. It conveys the fee, and operates as a conveyance *in præsenti,* though the enjoyment is postponed until the grantor's death."

It is insisted that in such cases there can be no occasion to apply the doctrine of relation back to the first from the final and actual delivery to the grantee, because the fee was conveyed at the time of the first delivery. Whatever technical distinction may be discovered, as bearing upon passage of title by conveyance and testamentary disposition, the rule must rest upon the same principle of legal fiction.

This deed was executed April 8, 1908; the grantor died September 29, 1908; and the deed was first actually delivered by the bank to defendants as a physical fact on March 7, 1910. Whatever delivery is recognized as made to grantees before that time is a legal fiction, and, if distinguishable from the doctrine of relation, it is a distinction without more than an extremely technical difference.

As between grantor and grantee and those in privity with them, it may, by legal fiction, be held that the delivery to a third party for subsequent delivery to the grantee, who assents, operates as a full and complete delivery, but as is said in *Hibberd* v. *Smith,* 67 Cal. 547 (4 Pac. 473, 8 Pac. 46, 56 Am. Rep. 726):

"The assent can get back to the date of delivery to the stranger only by virtue of the doctrine of relation, which is a fiction of law in which there is

always equity, never working an injury, and which is never permitted or applied so as to do wrong to third persons"—citing many authorities.

The decisions of this State fully recognize the principle. *Heffron* v. *Flanigan,* 37 Mich. 274; *Flint, etc., R. Co.* v. *Gordon,* 41 Mich. 420 (2 N. W. 648); *Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426, 60 Am. Rep. 291).

These few claims of creditors, consisting chiefly of the cost of burying the dead and necessities for the household, were existing, intermediate liens against the estate long before the second delivery of this deed, and the fiction of the first cannot be permitted to work a wrong by defeating them.

That the equities of the case are strongly in complainant's favor is clear. The deceased is indicated to have incurred few obligations and been solicitous to care for his debts. After the father's death, the son represented that the father owned this property, and directed that the funeral expenses be charged to the estate. While he has denied making this representation, he admitted promising to pay the debts, and gave the excuse for not doing so that threats of these proceedings prevented him from using this property to secure the means. When asked why he could not as well arrange it with complainant, who he admitted offered to take security on the property, he replied, "That is all right, but wouldn't do it." His own equivocal and contradictory testimony emphasizes lack of equities for the defense. He is seeking to maintain title to all his father had, and avoid even paying for the coffin he was buried in.

It is urged that equities cannot affect the legal questions involved in this litigation, and in no event could the misconduct of the son affect the rights of his wife, also a grantee named in the deed. She did not appear as a witness, and her attitude is not declared, except

by her joint answer with her husband. As to the strictly legal questions involved, this contention is true; neither could what was said and done by him strengthen or weaken the legal status of prior creditors, but what he said and did is competent to consider as bearing upon his credibility as a witness and his understanding relative to delivery and acceptance of the deed prior to his father's death.

The decree of the lower court set the deed aside absolutely as to all parties. Complainant is only interested to the extent of the proven debts of the estate, which amount to but a fraction of the value of the property. The decree should be modified to allow defendants to satisfy the same by payment of claims and costs within a reasonable time, in harmony with the rule declared in *Reed* v. *Jourdan,* 109 Mich. 128 (66 N. W. 947), and *Chapoton* v. *Prentis,* 144 Mich. 283 (107 N. W. 879).

With such modification, the decree is affirmed, with costs.

McAlvay, C. J., and Stone and Moore, JJ., concurred with Steere, J.

Ostrander, J. I concur in the result announced in the opinion of Mr. Justice Steere, upon the ground that the testimony fails to establish a delivery of the deed, in escrow, by the grantor. If the delivery was established, then, in my opinion, a different conclusion and result would be inevitable. I do not concur in that portion of the opinion which proceeds upon the assumption that the deed was delivered in escrow.

Brooke, Kuhn, and Bird, JJ., concurred with Ostrander, J.